J-S54002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF |
|---|---|
| Appellee | PENNSYLVANIA |
| v. | |
| VICTOR A. GARDNER, | |
| Appellant | No. 201 WDA 2015 |

Appeal from the Judgment of Sentence Entered December 10, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0004865-2014

BEFORE: BENDER, P.J.E., OTT, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED OCTOBER 05, 2016**

Appellant, Victor A. Gardner, appeals from the judgment of sentence of 5-10 years' incarceration, imposed following his conviction for witness intimidation. Appellant challenges the sufficiency of the evidence, the trial court's restricting the scope of defense counsel's cross-examination of the victim, the court's refusal to give a 'false in one, false in all' jury instruction, and the court's discretion at sentencing. After careful review, we affirm.

The trial court summarized the facts adduced at trial as follows:

At trial, Pittsburgh Police Officer Brandon Flicker testified that on October 16, 2013, he was dispatched on an unknown trouble call to 5622 Jackson Street. He arrived at the address simultaneously with Officer Snider. The downstairs neighbor let in the officers and directed them upstairs to an entry door. While en route, Officer Flicker received additional information that the 911 [d]ispatcher could hear someone tell the female to take her clothes off and the female saying no. After knocking for approximately one minute, Carla Taylor opened the door. She was crying, visibly distraught, and completely nude. The officers

walked past Taylor toward the area to which Taylor pointed and saw Appellant, also nude, coming out of a bedroom into a living room area. Taylor and Appellant put on clothes and Officer Flicker took Taylor to the front porch to interview her. Officer Flicker testified that he could smell alcohol on Taylor's breath, but she was lucid in her statement and was able to speak fairly normally with him. According to the [o]fficer, Taylor told him that Appellant was preventing her from leaving the building, and that she was afraid of him due to previous physical encounters. She further told the officer that Appellant said he would kill her if she tried to leave, and that Appellant then made her take off her clothes. Once Appellant was arrested and [taken] off of the property, Taylor gave a written statement of the incident.

Next, Carla Taylor testified under a grant of immunity and with counsel appointed to represent her. She testified that on October 15, 2013, she was home with her twelve[-]year[-]old autistic son. Appellant returned to their shared residence from attempting to purchase minutes on his cell phone. Appellant was in an agitated state because he had bought the wrong type of minutes and could not load them onto his phone. She testified that they each drank a beer and she told him that she was leaving to buy gasoline for her car, because she planned on jitneying the next morning. Immediately thereafter, Appellant said to Taylor, "Bitch, you're not going nowhere [*sic*]. As a matter of fact, take your fucking clothes off." She did as she was told because she was afraid he would become physically violent with her, as he had in the past. Taylor tried to convince Appellant to let her go to the bathroom, where she could attempt to escape from him. Instead[,] Appellant forcefully grabbed her neck and the back of her pants and escorted her into the bathroom, thus making escape impossible. Taylor testified that … she and Appellant returned to the bedroom where they had sexual intercourse without her permission. The assault ended when the police, whom Taylor had managed to summon without Appellant's knowledge, arrived at her door. Taylor pushed Appellant off her and ran, naked[,] to the front door. Taylor gave a verbal description to police of what had happened and wrote a statement shortly thereafter. Taylor wrote a second statement in January[,] 2014[,] taking blame for the incident and absolving Appellant of any responsibility. Taylor said she spoke with Appellant about what to put in the second letter. Taylor testified that the letter was not truthful and that she had lied to the [c]ourt to get Appellant out of jail.

- 2 -

Taylor further testified that after Appellant was arrested and taken to [the] Allegheny County Jail, he called [her] on "well over twenty" [occasions]. Appellant told her that she needed to change her statement to say she made it all up because she was drunk and off her medication. Taylor testified that on October 30, 2013, she gave false testimony at the preliminary hearing at Appellant's instruction. Despite Taylor's modified testimony, the charges were held for court. After the hearing, Appellant called Taylor again and said he was "going to have something done" to her. He continued to threaten her, even after Taylor mentioned telling the police about the t[h]reats.

Despite the conflict in their relationship and the assault in question, Taylor bailed Appellant out of jail and permitted him to return to her residence. Appellant continued to pressure Taylor to change her story to keep him from going to jail.

Taylor testified that on February 19, 2014, she and Appellant travelled together to Pittsburgh for a hearing, where she would be called as a Commonwealth witness, and during the walk from the parking lot to the courtroom, Appellant repeatedly told Taylor to say that she had made the entire thing up.

On February 26, 2014, while Taylor was on the phone with her in-home service caseworker, Appellant burst into the apartment, ran up to her and angrily yelled at her. Taylor told the caseworker to call the police because she was afraid that Appellant would become physically violent with her.

Both the Commonwealth and counsel for Appellant played numerous recordings of telephone conversations between Appellant and Taylor while the former was incarcerated. In his closing argument, the prosecutor argued that the numerous times Appellant said that he controlled his women indicated that Appellant's ego would not permit sexual rejection by a woman. The prosecutor also played tapes where Appellant told Taylor to lie—to say that she was drunk, that she was off her meds, anything to prevent Appellant from going to jail. Also, the prosecutor played a tape where Appellant said to Taylor[:] "You're going to get yours," to establish that Appellant threatened her. In his defense, Appellant used portions of the tapes to argue that Taylor was drunk, that she was off her meds, and that Appellant merely encouraged her to speak truthfully. While the portions of the tapes played at trial were not

- 3 -

transcribed, this [c]ourt recalls the substance and nature of these calls.

Trial Court Opinion (TCO), 10/28/15, at 3-6.

At CP-02-CR-0004865-2014, Appellant was charged with witness intimidation, 18 Pa.C.S. § 4952, and terroristic threats, 18 Pa.C.S. § 2706. By motion of the Commonwealth, that case was joined with various sexual offenses charged at CP-02-CR-0015084-2013. A jury trial began on September 8, 2014. Appellant was found guilty of witness intimidation, but not guilty of all other counts in both cases. On December 10, 2014, Appellant was sentenced to 5-10 years' incarceration.

Appellant filed a timely post-sentence motion on December 19, 2014, which was denied by the trial court on January 6, 2015. Appellant filed a timely notice of appeal on February 4, 2015. He then filed a timely, court-ordered Pa.R.A.P. 1925(b) statement on May 1, 2015. The trial court issued its Rule 1925(a) opinion on October 28, 2015.

Appellant now presents the following questions for our review:

   I.   Was the evidence insufficient to sustain the conviction for witness intimidation?

   II.   Did the trial court err in limiting [defense counsel]'s cross-examination of … Taylor on her probation status at the time of the preliminary hearing and her involvement with CYF[1] when it should have been admissible for impeachment purposes?

   III.   Did the trial court err in refusing to give the … "false in one, false in all" jury [instruction]?

---

[1] Allegheny County Office of Children, Youth and Families.

- 4 -

IV. Was the sentence imposed manifestly excessive, unreasonable, and an abuse of discretion when the court focused on an alleged comment that was never said by [Appellant] ("Bitch, if you don't make this go away, I'll fuck you up, I'll kill you.")[?]

Appellant's Brief at 5 (unnecessary capitalization omitted).

Appellant's first claim challenges the sufficiency of the evidence. Our standard of review of sufficiency claims is well-settled:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

The offense of witness intimidation is defined as follows:

**(a) Offense defined.--**A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:

(1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.

(2) Give any false or misleading information or testimony relating to the commission of any crime to any law enforcement officer, prosecuting official or judge.

(3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

(4) Give any false or misleading information or testimony or refrain from giving any testimony, information, document or thing, relating to the commission of a crime, to an attorney representing a criminal defendant.

(5) Elude, evade or ignore any request to appear or legal process summoning him to appear to testify or supply evidence.

(6) Absent himself from any proceeding or investigation to which he has been legally summoned.

18 Pa.C.S. § 4952(a).

Appellant asserts that none of the recorded conversations played by the Commonwealth demonstrated intimidation or an attempt to intimidate. Appellant further alleges that Taylor only claimed to have been intimidated, several months after the fact, when she began to suspect that Appellant had stolen her money. Appellant's Brief at 19. Appellant contends that "[t]here is nothing in the instant case other than a question of [Appellant's] telling … Taylor to tell the truth, while … Taylor, an admitted liar, had a motive of revenge and needed to get out of her own troubles." *Id.* at 25. To support this argument, Appellant cites to the jail telephone recordings between Appellant and Taylor, played by the Commonwealth and the defense during Appellant's trial. *Id.* at 20-24. Essentially, Appellant argues that these recordings failed to demonstrate intimidation, and instead showed that Appellant encouraged Taylor to tell the truth.

Initially, we note that Appellant's argument appears to sidestep our standard of review at times, which requires this Court to view the recordings in a light most favorable to the Commonwealth. Thus, to some extent, we agree with the Commonwealth's observation that Appellant's claim tends to "attack the weight, rather than the sufficiency, of the evidence." Commonwealth's Brief at 10.

Nevertheless, regardless of the content of the recordings and the various interpretations that might be applied to them, Taylor's testimony was itself sufficient to establish Appellant's commission of the offense. Taylor testified, without objection, to her general fear of Appellant, due to his prior physical abuse of her and his repeated threats. N.T., 9/10/14-9/16/14, at 77-78 (hereinafter, "NT").[2] She stated that between October 16 and 31 of 2013, Appellant called her from jail "well over 20 times." *Id.* at 91. Summarizing those conversations, Taylor attested to the following:

> Q.    During those conversations[,] what occurred?
>
> A.    Well, when [Appellant] first went in [to jail], [he] pretty much blamed me, blamed me for him being in jail; and I don't know what - - I started blaming myself; but I know what happened is the truth; and th[at] I have a kind heart. I did start, you know, feeling bad from the way he was talking to me and yelling at me, things he was saying.

_____

[2] We are compelled to note our displeasure with the form of the transcript produced in this case. Contrary to what this Court has come to expect from court reporters across the Commonwealth, including those from Allegheny County, the transcript of Appellant's trial lacks a table of contents, and index, and/or page headings indicating which witness is testifying.

He basically told me he has a rap sheet, and he could be facing a lot of time; and *he told me to come to the preliminary hearing and switch everything up*, told me - - told me, tell them I'm on medication, and that I wasn't on my meds, and say that I was drunk, and I made everything up on the statement and [on] the day he was arrested that I made it up.

I honestly thought at the time, when he told me to do that, when I went to the preliminary [hearing], at the time I was really thinking, if I do that for him that things would go away or things would get better; or I just was mixed with a lot of emotions at that time. He had me really feeling bad; and I told - - I told them what he told me to say at the preliminary [hearing], what to say.

*Id.* at 91-92 (emphasis added).

Taylor then admitted that she lied at the preliminary hearing. *Id.* at 93. Nevertheless, the charges were still held over for trial. Subsequently, Taylor testified that on October 31, 2013, she had another conversation with Appellant over the phone, regarding which she recalled the following:

He was mad at me. He said I fucked up. I didn't say nothing that he told me to say. *He said I fucked up, and he was going to have something done to me*; and I said, I did what you told me to say; and *I could have got myself in trouble to protect him, and lie for him*; and he was just talking very mean to me, and said I fucked up. I didn't say at all what he wanted me to say; and *he threatened me*; and I said, you know I can tell the police that you called and threatened me; and he didn't care.

*Id.* at 94 (emphasis added).

Despite these threats, Taylor hoped Appellant "was going to change, and [she] believed him." *Id.* at 95. With those hopes in hand, she bailed Appellant out of jail. *Id.* She even allowed him to return to her home. *Id.* Taylor testified that, when he returned to her home, Appellant continued to

tell her to "change the story" about the events of October 16, 2013. *Id.* at 96. She said:

> [He] would go over and over what I was supposed to say, just to go over what I'm supposed to say at the court hearing. Then I cut - - only thing I was concerned about, I knew I was lying for him. I was afraid I was going to go to jail or lose my son.

*Id.*

We conclude that Taylor's testimony, independent of the content of the jail telephone recordings, was itself sufficient to prove that Appellant intimidated and/or attempted to intimidate Taylor. This was adequately established through Taylor's testimony regarding Appellant's purported threat to "have something done" to her, and her testimony that "he threatened me." *Id.* at 94. This is particularly true in the context of Taylor's testimony regarding Appellant's prior threats and physical abuse of her. *See Commonwealth v. Doughty*, 126 A.3d 951, 958 (Pa. 2015) (recognizing that Doughty's prior history of "threatening behavior toward his wife" helped to inform whether he had threatened her for purposes of the witness intimidation statute).

Taylor's testimony was also sufficient to show that Appellant's intimidation was directed at coercing Taylor to provide false or misleading testimony. Specifically, we find the evidence sufficient to show Sections 4952(a)(1)-(4) were satisfied through the following portions of Taylor's testimony: that she "started blaming [her]self; but [she] kn[e]w what happened [was] the truth[,]" NT at 91; that she "did what [Appellant] told

[her] to say; and [she] could have got [her]self in trouble to protect him, and lie for him[,]" *id.* at 94; and that she "knew [she] was lying for him[,]" *id.* at 96.

To the extent that the jail telephone recordings tended to cast doubt on Taylor's testimony, that is an issue of credibility reserved for the factfinder. Viewed in a light most favorable to the Commonwealth, we must assume that the jury believed Taylor's testimony, and that the recordings did not undermine the fundamental assertion she made regarding Appellant's repeated (and sometimes successful) attempts to intimidate her into lying on his behalf. The jury could have also believed, to the extent that Taylor's conduct or words on certain occasions contradicted that fundamental assertion, that her behavior was the product of her misguided attempt to salvage her relationship with Appellant.

Finally, Appellant cites to several cases wherein the charge of witness intimidation was sustained upon arguably stronger evidence. *See* *Commonwealth v. Colington*, 615 A.2d 769 (Pa. Super. 1992); *Commonwealth v. Ritter,* 615 A.2d 442 (Pa. Super. 1992); and *Commonwealth v. Young*, 468 A.2d 1127 (Pa. Super. 1983). However, those cases do not establish, nor do they purport to establish, a minimum level of evidence necessary to sustain a conviction. Indeed, in *Doughty*, our Supreme Court sustained a witness intimidation conviction under a sufficiency challenge with evidence of arguably less strength than that

involved in the instant case. Accordingly, we conclude that Appellant's first claim lacks merit.

Next, Appellant claims that he was denied the opportunity to cross-examine Taylor on her probation status, which "should have been admissible for impeachment purposes to show that she had an interest or bias in favor of the Commonwealth" by testifying against Appellant. Appellant's Brief at 26 (unnecessary capitalization omitted). The Commonwealth claims this issue is waived.

Addressing waiver, we note that Appellant directs our attention to the Commonwealth's objection on page 140 of the transcript. In context, defense counsel was cross-examining Taylor regarding her level or degree of intoxication on October 16, 2013. Defense counsel first solicited from Taylor that she had been drinking that evening. NT at 139. Defense counsel then asked if she had been on probation at the time of her preliminary hearing, referencing something Taylor had said on one of the recorded phone calls. *Id.* No objection was made by the Commonwealth to this question. *Id.* at 139-140. Taylor responded, "[a]t the preliminary hearing I was on probation. I don't remember talking about it on the phone. I might have." *Id.* at 140. She then stated, regarding that phone call, that she "was talking about CYF … and my son." *Id.* Then the following exchange occurred:

> [Defense Counsel].    And CYF was involved in because police showed up at your house in January of that year, before this?
>
> [Prosecutor]:  Objection, Your Honor, relevancy.

- 11 -

[Defense Counsel]: Your Honor, [it] goes to her drinking and what the police observed at the scene.

THE COURT: Her drinking on any other occasion other than the night in question is not relevant.

*Id.* Defense counsel offered no further argument regarding the Commonwealth's objection.

There is no indication in the record that, at the time of Appellant's objection, the line of questioning being pursued was directed at impeaching Taylor based on her probation status, as Appellant now claims on appeal. Instead, defense counsel indicated that he intended to explore Taylor's "drinking" and "what the police observed at the scene." *Id*. Indeed, the Commonwealth did not object, just moments earlier, when defense counsel asked Taylor directly if she had been on probation. Accordingly, we conclude that this claim has been waived, as Appellant did not raise it in opposition to the Commonwealth's objection at trial. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

Next, Appellant claims that the trial court erred when it refused to give a 'false in one, false in all' jury instruction. Although the Commonwealth concedes that Appellant requested such an instruction, it argues that Appellant has waived this claim. The Commonwealth asserts that Appellant waived this claim by failing to object to the standard instructions being given to the jury. We disagree.

The record demonstrates that during a sidebar conference at which jury instructions were discussed, Appellant requested the 'false in one, false in all' instruction. NT at 197. The trial court quickly refused to read it, stating, "I don't give that charge[,]" citing this Court's general disapproval of the charge, and asserting that the standard jury instructions adequately address the pertinent instructions of the charge. *Id*. at 197-98. Appellant then later renewed his request just as the Court was about to issue its final instructions to the jury, as required by Pa.R.Crim.P. 647(C) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."). *Id*. at 245.

Although the Commonwealth attempts to demonstrate that defense counsel failed to object to the standard jury instructions, NT at 198-99, the Commonwealth misreads the record. It is clear that defense counsel simply summarized the ruling of the court with regard to which instructions it intended to read, without abandoning Appellant's claim when he stated, "[w]e're not going to do false in one, false in all." NT at 199. There is nothing in the record which supports the Commonwealth's claim that defense counsel "agreed with the trial court's decision that the instruction was not appropriate and would not be given." Commonwealth's Brief at 17.[3]

_____

[3] We note our strong disapproval of the following statement made by the Commonwealth in its brief: "When specifically asked if there was any
*(Footnote Continued Next Page)*

Defense counsel only agreed that *the court had decided* that the instruction would not be given. According, we do not agree that Appellant has waived his claim on the basis set forth by the Commonwealth.

> In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal.

*(Footnote Continued)* ─────────────

objection to the court simply using the standard instructions, defense counsel replied 'no.' ([citing to NT at 199])". Commonwealth's Brief at 17. This blatantly misconstrues the record. Nowhere on page 199 of the transcript, or in close proximity thereto, does the court suggest using the standard instructions exclusively, nor did defense counsel ever respond in that manner. The trial court stated, "Okay. So everybody has reviewed the Charge? There is no objections to the Standard Charges; and then the additional Charges that [defense counsel] proposed will, also, be given." NT at 198. Defense counsel then summarized the court's ruling as follows: "Yes, which is just conflicting testimony, impeachment, and that's it. We're not going to do false in one, false in all." NT at 199. The Commonwealth's attempt to construe defense counsel's truthful summary of the Court's ruling as an abandonment of Appellant's jury charge claim, particularly by falsely attributing to defense counsel something that he clearly did not say, is entirely improper.

- 14 -

*Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013) (quoting *Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. 2006)).

> "False in one, false in all" is a concept for assessing the weight of evidence. The maxim is simply a translation of the Latin phrase "*falsus in uno, falsus in omnibus*." It currently means that a jury may disregard the testimony of a witness if the jury believes that witness deliberately, or willfully and corruptly, testified falsely about a material issue. The standard jury charge reads:
>
>> If you decide that a witness deliberately testified falsely about a material point [that is, about a matter that could affect the outcome of this trial,] you may for that reason alone choose to disbelieve the rest of his or her testimony. But you are not required to do so. You should consider not only the deliberate falsehood but also all other factors bearing on the witness's credibility in deciding whether to believe other parts of [his][her] testimony.
>
> Pennsylvania Suggested Standard Jury Instruction (Crim) 4.15.

*Commonwealth v. Vicens-Rodriguez*, 911 A.2d 116, 117–18 (Pa. Super. 2006) (italics added, footnote omitted).

> In *Vicens-Rodriguez*, this Court further stated:
>
> It is true that the "false in one, false in all" charge is a proper statement of the law, and there is no harm if that charge is given. However, we do hold that when a full and complete charge is given on credibility, … there is no error in failing to give the specific charge.

*Id.* at 120.

Under this authority, it is effectively the rule of this Commonwealth that the failure to give a 'false in one, false in all' jury instruction can only provide a basis for relief on appeal if the jury charge actually given is

- 15 -

inadequate to instruct the jury on pertinent credibility issues. In his brief, Appellant adequately sets forth the factual basis for giving the 'false in one, false in all' charge, namely, Taylor's demonstrated inconsistency in veracity during the course of Appellant's prosecution for the events of October 16, 2013 and their aftermath. From these inconsistencies, Appellant concludes that

> had the jury been given this special instruction, it might well have concluded that … Taylor's testimony was mostly, if not completely, false. As such, the [trial c]ourt should have instructed the jury that they were allowed to wholly disbelieve her. But since this instruction was not given, the jury may have misunderstood what it may or may not have been allowed to do.

Appellant's Brief at 32.

However, as the holding in **Vicens-Rodriguez** makes clear, to be entitled to relief, Appellant must demonstrate more than just the applicability of the 'false in one, false in all' instruction to the facts of the case. Under that authority, Appellant must also establish the inadequacy of the jury instructions actually given on matters addressed by the 'false in one, false in all' instruction. In this regard, Appellant's brief contains no discussion whatsoever of the jury instructions actually given, and/or their inadequacy in relation to the proposed instruction. As such, we are compelled to conclude that Appellant cannot demonstrate reversible error and, therefore, that his third claim lacks merit.

Finally, Appellant presents a challenge to his sentence of 5-10 years' incarceration for his single conviction for witness intimidation. Appellant

argues that this sentence was manifestly unreasonable, excessive, and an abuse of the court's discretion.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Hoch*, 936 A.2d 515, 517–18 (Pa. Super. 2007) (citation omitted).

However,

> [c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis.

> *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra*, *supra* at 912-13.
>
> As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. *Commonwealth v. Malovich*, 903 A.2d 1247, 1252 (Pa. Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. *Id.*

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010).

Thus, we must first assess whether Appellant presents a substantial question for our review. We note that Appellant filed a timely notice of appeal, and he has complied with Pa.R.A.P. 2119(f). We have also reviewed Appellant's post-sentence motion, which we conclude adequately preserved the sentencing claim(s) he now presents on appeal.

As to whether he presents a substantial question for our review, we note that Appellant's claim is two-fold. First, he asserts that the sentencing court improperly considered a specific statement attributed to Appellant. "[A] claim that the sentence is excessive because the trial court relied on impermissible factors raises a substantial question." *Commonwealth v. Simpson*, 829 A.2d 334, 338 (Pa. Super. 2003). Second, he argues that the court did not state sufficient reason on the record for his sentence, because the court relied "almost exclusively" on the severity of the offense, rather than on the other statutorily required factors set forth in 42 Pa.C.S. § 9721(b). This also presents a substantial question for our review. *See*

*Simpson*, 829 A.2d at 338. (holding that the appellant's claim that "the trial court failed to sufficiently state its reasons for the sentence imposed" raised a substantial question); *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) (holding the argument that "the trial court failed to consider the factors set forth in 42 Pa.C.S.[] § 9721(b)" presented a substantial question for our review).

First, Appellant claims it was improper for the sentencing court to consider a statement attributed to him in the pre-sentence report. Specifically, the court stated: "The statements that we all heard you make, including the one in the presentence report, 'Bitch, if you don't make this go away, I'll fuck you up, I'll kill you,' [are] disturbing at a minimum." N.T., 12/10/14, at 10. Appellant argues that "[g]iven that this statement was the crux of their case, and no such recording was played at trial, nor did the [Commonwealth] elicit that statement from … Taylor," circumstances suggest that "this statement was never made by [Appellant]." Appellant's Brief at 37.

"Our Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009). Moreover, this Court has held that when a defendant fails to dispute the contents of a pre-sentence report at sentencing, he "waive[s]

- 19 -

his right to put the Commonwealth to further proof." ***Commonwealth v.***

***Smith***, 378 A.2d 1278, 1281 (Pa. Super. 1977).

Here, Appellant did object to certain aspects of his pre-sentence report. ***See*** N.T., 12/10/14, at 2-3. When asked if he had any objections to the pre-sentence report, defense counsel stated at follows:

> There w[ere] some minor discrepancies, but nothing of major importance. I believe that his date of birth was off by just a couple days. There was information that he did not relate to the interviewer concerning his upbringing and abuse that he had witnesse[d] that occurred to his mother at the hands of several of her boyfriends at the time. He wasn't sure how much he had to get into or what the interviewer wanted from him. *But other than that, everything appears to be correct*.

***Id.*** (emphasis added). However, it is clear that Appellant did not object to the statement at issue. Additionally, Appellant did not object when the sentencing court recited the at-issue statement from the pre-sentence report, ***id.*** at 10, nor at the close of the court's comments, ***id.*** at 12. Thus, we conclude that Appellant waived this aspect of his claim.

In any event, had Appellant not waived the claim, we would conclude that it is meritless. As noted above, Taylor testified at trial that Appellant made substantially similar comments to her over the phone. For instance, she testified as follows:

> He said I fucked up. I didn't say nothing that he told me to say. He said I fucked up, and he was going to have something done to me; and I said, I did what you told me to say; and I could have got myself in trouble to protect him, and lie for him; and he was just talking very mean to me, and said I fucked up. I didn't say at all what he wanted me to say; and he threatened me[.]

NT at 94.

In our view, the statement quoted by the sentencing court from the pre-sentence report is substantially the same in content as conveyed by Taylor's own testimony. Thus, even if it were improperly included in the pre-sentence report, we do not believe the at-issue statement could have significantly affected the sentencing court's discretion in imposing Appellant's sentence.

Appellant also contends that the sentencing court impermissibly focused on the gravity of the crime, at the expense of the other statutorily-mandated factors set forth in 42 Pa.C.S. § 9721(b) (stating that "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant").

As noted above, the sentencing court's consideration of the pre-sentence report creates a presumption that the court considered "all appropriate sentencing factors and considerations[.]" **Ventura**, 975 A.2d at 1135; **see also Commonwealth v. Fowler**, 893 A.2d 758, 766–67 (Pa. Super. 2006) ("In imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. However, where the sentencing judge had the benefit of a presentence

investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Additionally, the sentencing court must state its reasons for the sentence on the record. The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the pre-sentencing report; thus properly considering and weighing all relevant factors.") (citations omitted).

Here, the sentencing court clearly had the benefit of a pre-sentence report, and must be afforded the attendant presumption. Thus, we must assume that the sentencing court considered Appellant's rehabilitative needs, the impact of his offense on the victim and the community, and the protection of the public, in addition to the gravity of the offense. Moreover, the court sentenced Appellant within the standard range of the sentencing guidelines for his offense. Appellant's sentence of 5-10 years' incarceration is not, therefore, patently excessive or unreasonable, despite also being the statutory maximum penalty for a second degree felony. It is the minimum recommended standard range sentence for a defendant with repeat-felon status under the guidelines. Thus, Appellant's own lengthy criminal record, dating back to 1983, is the primary (but not exclusive) cause for his lengthy sentence, not the gravity of the current offense. That criminal history included a relatively recent conviction for drug-related offenses in 2012, for which Appellant was paroled in May of 2013, just five months prior to his

arrest in this case. That fact alone suggests that consideration of Appellant's rehabilitative needs should not overshadow the gravity of his offense, as past criminal penalties imposed on him have obviously been insufficient to deter his propensity to commit criminal conduct. And, while Appellant's previous offenses were mostly "theft-related charges that he received in the midst of a drug addiction issue[,]" *id.* at 5, his current offense struck at a core function of the judicial system, which must remain a safe harbor for victims of crimes to come forward in the pursuit of justice. This demonstrates that Appellant's crimes are escalating in gravity, giving necessary context to the otherwise apparent harshness of his sentence in this case. For all the aforementioned reasons, we conclude that the sentencing court did not abuse its discretion in imposing Appellant's 5-10 year sentence.

Judgment of sentence *affirmed*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/5/2016