**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Gilbert Lee FOWLER, Appellant.**

Superior Court of Pennsylvania.

Submitted June 6, 2005.
Filed Feb. 15, 2006.

---

William E. Brennan, Wexford, for appellant.

Michael W. Streily, Deputy Dist. Atty., Sandra Preuhs, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

BEFORE: KLEIN, BOWES and GANTMAN, JJ.

OPINION BY BOWES, J.:

¶ 1 Gilbert Lee Fowler appeals the twenty-to-forty-year term of imprisonment imposed after he pleaded guilty to third degree murder. We affirm the judgment of sentence and defer a claim of ineffective assistance of counsel to collateral review.

¶ 2 On September 3, 2003, Appellant tendered a guilty plea to third degree murder. The terms of the plea agreement were set forth on the record: "The Commonwealth has agreed [to withdraw] the general count of criminal homicide, defendant is entering a plea to murder of the third degree. There is no agreement as to sentencing." N.T. Plea Proceeding, 9/8/03, at 2–3. When asked if that statement was his understanding of the plea agreement, Appellant responded, "Yes." *Id.* at 3. The plea court continued that the maximum penalty for third degree murder is "20 to 40 years," and Appellant stated that he understood. *Id.*

¶ 3 The Commonwealth proceeded to present its factual basis for the guilty plea. The coroner would have established that on May 15, 2002, seventeen-year-old Jason Griffin was a homicide victim, who died of a gunshot wound to the chest and also sustained a gunshot wound to the thigh. In addition to the bullets found in Jason Griffin's chest and thigh, a third bullet was recovered at the scene of the crime. There were two eyewitnesses to the murder. Specifically, Michael Buccannan, an acquaintance of Appellant, would have testified that

on that night in question, he picked up the defendant and drove him to 830 Adlaie Street purportedly to retrieve a CD which had been loaned to Leon Haughton.

He would have testified that he remained in his car outside on Adlaie Street, that the defendant entered the residence, that he heard some commotion, that he went out, finally got out of the car, that he observed on the porch area of 830 Adlaie the defendant and the victim engaged in verbal argument, that when he turned around to get back in his car, he heard a gunshot. He turned back around. He saw the defendant holding a firearm extended to the direction of the victim, that the victim was on the porch area, the defendant was down slightly off of the porch.

At that time he would have testified that the defendant got in to his vehicle and they drove away from the scene. He would have testified that at that time he thought that the defendant discarded the weapon but he was not certain.

*Id.* at 5–6. The other eyewitness was Leon Haughton, who

would have testified that he was on the side of the house placing trash when he heard a gunshot. He looked up, he saw the defendant pointing a firearm in the direction of the victim, that he heard two more shots, saw the victim crumple over.

He saw the defendant run from the scene, get into a red vehicle and that that vehicle peeled out of the area and left the scene.

*Id.* at 6.

¶ 4 Finally, Appellant confessed to the murder, telling police that "during the course of an argument, he took a firearm and did fire it at least twice in the direction of the victim." *Id.* at 8–9. When asked, Appellant's counsel responded that she had "[n]o additions or corrections" to the factual recitation offered by the Commonwealth. *Id.* at 9. Appellant told the court that he had read and understood the written guilty plea form, which was incorporated into the record, and plea counsel informed the court that she was satisfied that Appellant's guilty plea was knowing and voluntary.

¶ 5 Appellant was sentenced on December 11, 2003. The court thoughtfully considered a presentence report, Appellant's expressions of remorse, and testimony from Appellant's stepmother as well as members of the victim's family. Appellant had juvenile adjudications but no adult convictions so his prior record score was zero. The sentencing court imposed a standard range sentence of twenty to forty years imprisonment, which, as noted, was the statutory maximum.

¶ 6 Appellant filed a post-sentence motion seeking modification of his sentence on various grounds and withdrawal of his guilty plea. Appellant stated only the following with regard to the latter assertion:

1. On September 12, 2003, the defendant entered a guilty plea to a charge of Criminal Homicide.

2. Defendant wishes to withdraw his plea.

3. Defendant asserts his plea was not knowing, intelligent or voluntary.

4. Defense counsel has been directed by defendant to withdraw defendant's plea.

Post–Sentence Motions, 12/19/03, at 3. Notably, the motion failed to specify the basis upon which Appellant premised his assertion that his guilty plea was not knowing, intelligent, or voluntary.

¶ 7 A hearing on the post-sentence motion was held on May 6, 2004. Appellant was represented by new counsel, and his plea counsel, Kathleen Cribbins, testified as follows during her direct examination. She had met with her client multiple times to discuss the strengths and weaknesses of the case, and in addition, she had discussed the possibility of the above plea agreement with the Commonwealth and her client in advance of trial. During plea negotiations, Appellant was concerned about his sentence, and Attorney Cribbins informed him that she believed he would receive a sentence in the range of seven and one-half to fifteen, ten to twenty, or fifteen to thirty years. However, Ms. Cribbins stated that she never guaranteed Appellant any specific result. Attorney Cribbins did not recall discussing the guideline ranges with Appellant and did not remember whether she told him that the standard range sentence was the statutory maximum, even with a prior record score of zero.

¶ 8 Appellant testified that Ms. Cribbins' told him that he would receive a minimum sentence of seven and one-half to thirty years imprisonment but admitted that he understood when the plea court informed him that his sentence could be twenty to forty years imprisonment. Appellant represented that he was not aware that the standard range sentence was twenty to forty years imprisonment. On cross-examination, Appellant made these concessions:

Q. Sir, when your attorney discussed the possibility of your pleading guilty back in September of last year to murder in the third degree, you understood that the maximum penalty you could receive was 20 to 40 years; correct?

A. Yes, sir.

Q. You also understood as part of the plea agreement that there was no agreement as to what your sentence might be; right?

A. Would you repeat that, please.

Q. You understood as part of your plea agreement that there was no understanding or no agreement between your lawyer and the District Attorney's Office as to what your sentence might be?

A. Yes, sir.

Q. The basis of the plea was to withdraw the most serious charge that was in the indictment, which would have been murder in the first degree. You understood that; correct?

A. Yes, sir.

Q. And you did personally fill out that long 10—or 12—page document that's entitled Guilty Plea/Explanation of Defendant's Rights?

A. Yes, sir.

Q. And you read the questions; correct?

A. Yes, sir.

Q. And you also answered either yes or no, depending what the question was? You did respond to each question?

A. Yes, sir.

N.T. Post–Sentence Motions, 5/6/04, at 27–28. Appellant also admitted that before he entered his guilty plea, he heard from other inmates that he could receive the statutory maximum. No other testimony was elicited. Thus, other than the sentencing issue, Appellant did not delve into any other matter or raise any other contention about the voluntary and knowing nature of his guilty plea during the post-sentence hearing.

¶ 9 This appeal followed the denial of Appellant's post-sentence motions. Appellant now raises these contentions:

I. Plea counsel was ineffective for failing to challenge the defective colloquy insofar as the court failed to inform Mr. Fowler of the elements of the crime to which he was pleading guilty, and to ascertain whether Mr. Fowler understood those elements, which resulted in an unknowing, involuntary and unintelligent plea; and counsel was ineffective for not moving to withdraw the plea on these grounds.

II. Counsel rendered ineffective assistance when she failed to inform the defendant that the statutory maximum sentence fell within the standard range of the guidelines, and assured him that he would not receive the statutory maximum, but would receive no more than 15 to 30 years imprisonment, such that the defendant did not have accurate and complete knowledge of the consequences of his plea in violation of the due process clause of the state and federal constitutions.

[III]. The lower court abused its discretion by focusing on the seriousness of the crime and imposing the statutory maximum sentence, which was the highest possible standard range sentence, and which was unreasonable and manifestly excessive, and which was contrary to the sentencing code and disregarded the fundamental norms underlying the sentencing process.

Appellant's brief at i-ii.

¶ 10 Since Appellant's first two claims involve allegations of ineffective assistance

of plea counsel and since this is a direct appeal, our Supreme Court's pronouncement in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), is implicated. In *Grant*, the Supreme Court stated, "[A]s a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Id.* at 67–68, 813 A.2d at 739. Our Supreme Court subsequently has disapproved of every Superior Court decision creating an exception to *Grant.* In *Commonwealth v. O'Berg*, 584 Pa. 11, 20, 880 A.2d 597, 602 (2005) (emphasis added), the Supreme Court considered our "short sentence" exception to the holding in *Grant*, indicated that there would be no such exception, and stated:

> Accordingly, we believe the best course of action is to reaffirm our decision in *Grant* and reiterate that, as a general rule, claims of ineffective assistance of counsel will not be entertained on direct appeal. Moreover, **we take this opportunity to disapprove of any decisions of the Superior Court that are to the contrary.**

¶ 11 After *O'Berg*, the single exception to *Grant* was the *Bomar* exception, which was announced by our Supreme Court and which provided that if a claim of ineffectiveness of trial counsel had been **fully developed at a hearing devoted to the question of ineffectiveness**, the limitations of *Grant* would not apply. *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003). Recently, the Supreme Court delineated the parameters of the *Bomar* exception:

> In *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (Pa.2003), this Court recognized a limited exception to *Grant.* *Bomar* was litigated under the [Com. v. ]Hubbard[, 472 Pa. 259, 372 A.2d 687 (1977) ] rule [, which allowed claims of trial counsel's ineffectiveness to be

raised during direct appeal]. *Bomar's* trial counsel withdrew from the case after sentencing, and new counsel entered the matter and filed post-sentence motions, raising claims of ineffective assistance of counsel. The trial court conducted hearings at which counsel testified, and later wrote an opinion addressing the merits of the claims. In such a circumstance, the concerns which powered the rule in *Grant* were not implicated; accordingly, *Bomar* held this Court would also pass upon the merits of the claims on direct review. *Id.* at 853–55; *see also Commonwealth v. O'Berg*, 880 A.2d 597 (Pa. 2005) (discussing *Bomar*).

*Commonwealth v. May*, 584 Pa. 640, 654, 887 A.2d 750, 758 (2005); *see also Commonwealth v. Chmiel*, —— Pa. ——, 889 A.2d 501 (2005) (finding *Bomar* exception applied where defendant filed post-sentence motions raising claims of trial counsel's ineffectiveness, hearings were conducted on ineffectiveness claims, and trial court addressed claims).

¶ 12 In *May*, the Supreme Court considered whether the *Bomar* exception would apply when there had not been a hearing devoted to the question of trial counsel's ineffectiveness but where the question of ineffectiveness had been addressed by the trial court because the record was sufficient to review the question. The Court ruled that the exception would not apply.

¶ 13 Specifically, in that case, the defendant had raised claims of trial counsel's ineffectiveness in a Pa.R.A.P. 1925(b) statement. After observing that the claims should be deferred to collateral review, the trial court nevertheless addressed the merits of the underlying issues in its Pa.R.A.P. 1925(a) opinion as separate issues of prosecutorial misconduct and trial court error. The trial court concluded that none of those issues was meritorious.

¶ 14 The Supreme Court in *May* stated, "To the extent the claims would sound in trial court error, they are waived due to the absence of contemporaneous objections. *See* Pa.R.A.P. 302(a)." *Id.* at ——, 887 A.2d at 758. The Supreme Court continued that "the *Bomar* exception to *Grant* does not apply so as to make the claims reviewable on this direct appeal. The claims were not raised when the matter was within the jurisdiction of the trial court and, as a consequence, the court did not hold an evidentiary hearing at which trial counsel testified." *Id.*

¶ 15 In addition, the Court stated an alternative justification for deferring direct appeal claims of trial counsel's ineffectiveness to collateral review. It observed that there was no reason to believe that the challenges raised regarding counsel's ineffectiveness exhausted all of the claims, either record or non-record based, that could be pursued in the "fuller procedural time-frame made available for PCRA review." *Id.* In light of the possible existence of other claims of ineffectiveness, the court ruled:

> Entertaining these claims now would likely involve piecemeal review and would generate the future complication of requiring appellant to "layer" additional claims of ineffectiveness upon PCRA review. Accordingly, to facilitate a more appropriate and complete review of appellant's collateral claims, we dismiss the instant claims of ineffective assistance of trial counsel without prejudice to appellant's right to pursue those

claims in a petition filed pursuant to the PCRA.

*Id.* Thus, *Grant* no longer rests just upon concerns about an incomplete record and trial court opinion for purposes of review. Our Supreme Court has indicated that it does not approve of a piecemeal approach to litigation of ineffectiveness claims and prefers that they all be channeled into post-conviction proceedings.

¶ 16 These Supreme Court pronouncements impact on the present case as follows. The first issue herein is subject to *Grant*. Appellant's argument that his guilty plea was involuntary because the trial court did not ensure that he understood the elements of third degree murder during the oral colloquy was not presented to the trial court at any point when the trial court retained jurisdiction, and it is waived under Pa.R.A.P. 302(a). *May, supra.* Furthermore, Appellant failed to delve into this matter at any point during the hearing conducted on his post-sentence motion. It simply never was mentioned. Thus, plea counsel's ineffectiveness in failing to challenge the defective colloquy on the grounds that the plea court did not ensure that Appellant was aware of the elements of the crime was not fully developed at a hearing devoted to this issue of ineffectiveness, and the *Bomar* exception to *Grant* does not apply.[1]

¶ 17 Appellant's second issue, that his guilty plea was improperly induced by counsel's false representation

---

1. Indeed, Appellant's claim that his guilty plea is unknowing and involuntary because he did not understand the elements of the crime is directly contrary to Appellant's representation in his written plea colloquy that counsel explained the elements of the offense to him. No testimony was presented at the hearing to refute this representation, and the record at the present time cannot sustain any finding that Appellant was not informed of the ele-

ments of third degree murder by counsel, in accordance with the representation in the written colloquy. *See Commonwealth v. Morrison,* 878 A.2d 102 (Pa.Super.2005) (failure of plea court to delineate elements of crime at oral colloquy did not vitiate knowing and voluntary nature of guilty plea where attendant circumstances made clear that defendant was aware of elements).

that he would receive a lesser sentence than he did receive, is subject to the *Bomar* exception. The issue was presented to the trial court when it still had jurisdiction, and counsel's ineffectiveness was fully developed at the evidentiary hearing held in this matter.

■ We now proceed to the merits of Appellant's second contention.

[C]laims of ineffective assistance of counsel may provide grounds for relief only where the petitioner establishes that: 1) his underlying claim is of arguable merit, 2) counsel lacked any reasonable basis for the act or omission alleged, and 3) that the petitioner was prejudiced as a result, *i.e.,* "that there is a reasonable probability that, but for the act or omission challenged, the outcome of the proceeding would have been different." [*Com. v.* ]*Rivers,* [567 Pa. 239,] 786 A.2d [923] at 927 [2001]; *see also Commonwealth v. Shaffer,* 763 A.2d 411, 415 (Pa.Super.2000).

*Commonwealth v. Chazin,* 873 A.2d 732, 735 (Pa.Super.2005). While a defendant is entitled to effective representation during the plea process,

allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' "

*Commonwealth v. Allen,* 833 A.2d 800, 802 (Pa.Super.2003) (quoting *Commonwealth v. Hickman,* 799 A.2d 136, 141 (Pa.Super.2002)).

¶ 18 Herein, Appellant argues that his guilty plea was involuntary and unknowing in that it was improperly induced by counsel's promise that he would not receive the statutory maximum and because counsel never told him that the standard range sentence was the statutory maximum. Appellant argues that counsel "assured" him that he would not receive the statutory maximum and his plea is infirm based on "unfulfilled promises made to [him] by counsel." Appellant's brief at 23.

¶ 19 We reject Appellant's attempt to characterize Ms. Cribbin's testimony as guaranteeing him a lesser sentence. Attorney Cribbins testified at the hearing that she informed Appellant that she thought his sentence would be in the range of seven and one-half to fifteen, ten to twenty, or fifteen to thirty years. N.T. Post–Sentence Motions, 5/6/04, at 6. However, Attorney Cribbins testified that she never guaranteed Appellant any specific result. *Id.* In addition, the plea court told Appellant that he could receive a twenty-to-forty-year sentence and that there was no agreement about the sentence. Finally, an inmate cautioned Appellant that he could receive the statutory maximum.

■ ¶ 20 The record is clear that Appellant knew he risked a twenty-to-forty-year term of imprisonment and that no sentence was promised to him. He elected to proceed to plead guilty. Moreover, there is no legal requirement that a defendant be aware of the guideline ranges in order to enter a valid guilty plea. A defendant must be informed of the statutory maximum, and Appellant was given that information. Counsel's statements to Appellant about what she believed his likely sentence might be did not induce the guilty plea because any misconceptions Appellant had about his possible sentence were dispelled by the written and oral plea colloquies.

¶ 21 We observe that there were two eyewitnesses to the crime. Mr. Buccannan's testimony would have been that he saw "defendant holding a firearm extended to the direction of the victim, that the victim was on the porch. area, the defendant was down slightly off of the porch." N.T. Guilty Plea, 9/8/03, at 6. Similarly, Mr. Haughton would have said that he saw Appellant "pointing a firearm in the direction of the victim." *Id.* at 6. Appellant confessed to the murder, telling police that "during the course of an argument, he took a firearm and did fire it at least twice in the direction of the victim." *Id.* at 8–9. Three bullets were recovered at the scene. This evidence supported a first degree murder conviction, which carries a term of life imprisonment. As the Commonwealth ascertained at the post-sentence hearing, Appellant pleaded guilty to avoid this possibility. He did not tender a guilty plea based on promises by counsel.

¶ 22 Appellant's final position is that his standard range sentence was unreasonable. He suggests that the court failed to state adequate reasons for the sentence and did not take into account mitigating factors. These challenges relate to the discretionary aspects of the sentence imposed.

[A]ccordingly, pursuant to the dictates of 42 Pa.C.S.A. § 9781, [Appellant] must petition for allowance of appeal by including in his brief a separate, concise statement of the reasons relied upon for allowance of appeal. *See* Pa.R.A.P. 2119(f); *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (Pa.1987). The Rule 2119(f) Statement must "raise a substantial question as to the appropriateness of the sentence" by demonstrating that the "actions of the sentencing court [were either] inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentenc-

ing process." *Commonwealth v. Gaddis,* 432 Pa.Super. 523, 639 A.2d 462, 469 (1994), *appeal denied,* 538 Pa. 665, 649 A.2d 668 (1994).

*Commonwealth v.· McWilliams,* 2005 PA Super 392, ¶ 8, 887 A.2d 784.

¶ 23 Appellant has complied with these requirements by including a separate statement of reasons relied upon for this appeal. In addition, Appellant correctly reports that an allegation that the court failed to state adequate reasons on the record for the sentence imposed presents a substantial question. *Commonwealth v. Whitmore,* 860 A.2d 1032 (Pa.Super.2004); *Commonwealth v. Goggins,* 748 A.2d 721, 728 (Pa.Super.2000). Thus, we consider the merits of the sentencing argument.

¶ 24 In this case, the sentencing court delineated these reasons for its standard-range sentence: "I've read the presentence investigation report and I've listened to everything that was stated today and I've read the submissions, as I indicated previously. I've also considered the fact that [Appellant] has pled to this charge." N.T. Sentencing, 12/11/03, at 29.

¶ 25 Since the sentencing court had and considered a presentence report, this fact alone was adequate to support the sentence, and due to the court's explicit reliance on that report, we are required to presume that the court properly weighed the mitigating factors present in the case. *Commonwealth v. Boyer,* 856 A.2d 149 (Pa.Super.2004). In *Boyer,* we stated:

In imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. However, where the sentencing judge had the benefit of a presentence investigation report, it will be presumed that

he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. *Commonwealth v. Burns,* 765 A.2d 1144, 1150–1151 (Pa.Super.2000) (citations omitted). Additionally, the sentencing court must state its reasons for the sentence on the record. 42 Pa. C.S.A. § 9721(b). The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the pre-sentencing report; thus properly considering and weighing all relevant factors. *See Burns, supra,* citing *Commonwealth v. Egan,* 451 Pa.Super. 219, 679 A.2d 237 (1996).

*Id.* at 154. Since the sentencing court clearly relied upon the presentence report, under *Boyer,* Appellant's two sentencing claims are meritless.

¶ 26 Furthermore, it is settled that sentencing is committed to the sound discretion of the trial court. *Commonwealth v. Whitman,* 880 A.2d 1250 (Pa.Super.2005). The factual basis for Appellant's guilty plea establishes that Appellant pointed a firearm at the unarmed victim and shot at him three times. We can find no reason to place this case outside of the standard range, which is presumptively where a defendant should be sentenced. *See Commonwealth v. Walls,* 846 A.2d 152 (Pa.Super.2004), *appeal granted,* 583 Pa. 662, 875 A.2d 1075 (2005).

¶ 27 The initial ineffectiveness claim is dismissed without prejudice. Judgment of sentence affirmed.

¶ 28 Judge KLEIN Concurs and files a Concurring Opinion.

CONCURRING OPINION BY KLEIN, J.:

¶ 1 I agree with a great deal of the majority opinion, but have a problem with a footnote in the case, in which it is indicated that under *Commonwealth v. Morrison,* 878 A.2d 102 (Pa.Super.2005), there is sufficient evidence by looking at the "totality of the circumstances" to show that Fowler was aware of the elements of the crime. Instead, I believe that at a PCRA hearing, new counsel should be appointed to layer an ineffectiveness claim against post-sentence motion counsel for waiving Fowler's best arguments—that Fowler was never advised as to the elements of third-degree murder, and that to find malice, the defendant must admit that the killing was not in self-defense.

¶ 2 I do agree with the following in the majority opinion:

1. The record of the post-sentence hearing is sufficient to sustain the holding that trial counsel was not ineffective in failing to advise Fowler that he could receive a 20–40 year sentence, since trial counsel can only give his or her best judgment and does not have a crystal ball. The post-sentence hearing judge cannot be faulted for believing trial counsel's testimony and disbelieving Fowler's.

2. The claim that Fowler was not advised of the elements of the crime was waived at the post-sentence hearing and now can only be presented at a PCRA hearing with new counsel and a layered ineffectiveness claim.

3. I agree that there is no abuse of discretion in the sentence of 20 to 40 years under the facts of this case, which is in the standard range. It is noted that while the plea was to third-degree murder, the case borders on first-degree murder.

¶ 3 However, I believe that had new counsel at the post-sentence motion argued that the colloquy was defective, this well might have been sufficient to enable

Fowler to withdraw his plea. Certainly, it is possible that the elements of third-degree murder were explained to Fowler by trial counsel. Likewise, trial counsel might have explained the possibility of and problems with a self-defense claim, so that under the totality of the circumstances this argument might not have merit. But on the state of the record, we do not know for sure.

¶ 4 For the reasons stated in my dissent in *Morrison,* I believe that *Morrison* flies in the face of the Pennsylvania Supreme Court decision in *Commonwealth v. Willis,* 471 Pa. 50, 369 A.2d 1189 (1977), which held that six areas of a guilty plea are *mandatory* for the judge to colloquy with the defendant. *See also Commonwealth v. Dilbeck,* 466 Pa. 543, 353 A.2d 824 (1976). This Court has held that there is a need for an *on-the-record* demonstration that the defendant understood the elements of the crimes. *See Commonwealth v. Allen,* 278 Pa.Super. 501, 420 A.2d 653, 655 (1980).

¶ 5 I do not find sufficient indication in this record that Fowler understood the nature of the charge here. The majority's supposition that because Fowler signed a written colloquy indicating counsel had explained the elements to him does not fulfill this requirement. *See* Majority Opinion, at 764, n. 1.

¶ 6 *Willis* held mandatory the following six areas of inquiry during a guilty plea colloquy: 1) does defendant understand the nature of the charges; 2) is there a factual basis for the plea; 3) does defendant understand he or she has a right to a jury trial; 4) does defendant understand he or she is innocent until proven guilty; 5) is defendant aware of the possible range of sentences and/or fines; and 6) is defendant aware the judge is not bound by the terms of any plea agreement unless the judge accepts the agreement. In addition,

the nature of the crime has been defined as describing the elements of the crime in understandable terms. *See Commonwealth v. Brown,* 269 Pa.Super. 498, 410 A.2d 366 (1979); *see also Commonwealth v. Allen, supra* (collecting cases). Although omission of any of the six lines of inquiry will not necessarily invalidate the plea so long as there exists sufficient indication that the defendant entered the plea knowingly and voluntarily, *Commonwealth v. Johnson,* 460 Pa. 169, 331 A.2d 473, 477 (1975), the six minimum requirements remain indispensably significant because their coverage in the guilty plea process, or lack thereof, goes a long way in illustrating just how knowingly and voluntarily the plea was tendered. *See, e.g., Commonwealth v. Flanagan,* 578 Pa. 587, 854 A.2d 489 (2004) (failure to satisfy one of six requirements, viewed in totality of circumstances which revealed a second error in the plea process, rendered guilty pleas involuntary and unknowing).

¶ 7 The Comment to Rule 590 states:

In addition, nothing in the rule would preclude the use of a written colloquy that is read, completed and signed by the defendant. This written colloquy would have to be supplemented by some on-the-record oral examination. Its use, would not, of course, change any other requirements of law, including these rules, regarding the prerequisites of a valid guilty plea or plea of *nolo contendere.*

Pa.R.Crim.P. 590 (Comment).

¶ 8 While we are required to examine the totality of the circumstances to determine whether the plea was knowing and voluntary, *Commonwealth v. Schultz,* 505 Pa. 188, 477 A.2d 1328 (1984), this does not, in my opinion, abrogate the requirement that the six issues be addressed or there be a record to make it clear that the defendant was otherwise made aware of all

six factors. Here, the elements of third-degree murder were never listed or explained in *either* the written colloquy or the oral colloquy. The written colloquy is a ten-page standard form and makes no mention of homicide or third-degree murder. The trial court's entire review of the charge during the oral colloquy consists of the following:

> MR. BEEMER (Commonwealth attorney): The Commonwealth has agreed for withdrawing the general count of criminal homicide, defendant is entering a plea to murder of the third degree. There is no agreement as to sentencing.
>
> THE COURT: Very well... Is this your understanding of the plea agreement?
>
> MS. CRIBBINS (defense attorney): Yes, it is.
>
> THE COURT: Mr. Fowler, is this your understanding of the plea agreement?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Very well. The charge is criminal homicide, I believe. Maximum penalty is 20 to 40 years for third-degree murder as well as $25,000 fine.
>
> MR. BEEMER: That's correct, Your Honor.
>
> THE COURT: Do you understand that, sir?
>
> THE DEFENDANT: Yes, sir.

In fact, as I stated in *Morrison, supra,* Mere iteration of the elements of the crime is not enough. An explanation of the law in terms of the facts of the case is essential to a voluntary plea. As the Supreme Court of the United States has stated, "[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts."

878 A.2d at 113, quoting *Boykin v. Alabama,* 395 U.S. 238, 243 n. 5, 89 S.Ct. 1709, 23 L.Ed.2d 274, (1969); *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

¶ 9 Simply asking Fowler if he discussed with his attorney the elements of offenses charged is not enough. If this is the extent of it, we as a reviewing court have *nothing* on which to assess the quality of the explanations given by counsel and thereby base a determination of whether a plea was voluntarily or knowingly given. At least the trial judge should mention the six elements. Otherwise, there must be detailed facts to show that the defendant was otherwise made aware of them.

¶ 10 At this point, we have no idea whether defendant was aware of the elements of the crime and knew what facts the Commonwealth could present to prove its case. The crime of "third-degree murder" is not self-defining. There should be a definition of malice understandable to a lay person, as well as a discussion of factors such as self-defense, which could rebut any malice. Certainly in this case there *was* enough evidence to sustain a conviction. At the same time, Fowler did claim self-defense to the police. He should have been told that to sustain a guilty plea, he would have to admit that the shooting was *not* in self-defense.

¶ 11 There must be more than just a guess or conjecture to conclude that the "totality of the circumstances" indicates that a defendant intelligently waived his rights to go to trial. At this point, we can only speculate that Fowler understood the elements of third-degree murder, and particularly that he was admitting the shooting was not in self-defense.

¶ 12 As a former trial judge who took guilty pleas thousands of times, I know that it is easy for a trial judge to spend an additional minute or two in a formal collo-

quy to make sure that the defendant understands at least the basic six factors, including the elements of the crime and the facts that the Commonwealth can prove at trial. Unfortunately, I perceive an emerging trend to speed through the colloquies, even in cases where there is the potential for a significant state sentence. Short-cutting the colloquy results in countless hours spent in reviewing ineffectiveness claims and plea challenges on appeal.

¶ 13 It is also the responsibility of the prosecutor to assure that the judge covers all that is necessary. We on the appellate court should not be placed in the position of having to speculate about what the defendant was apprised of and what he understood. Likewise, judges in PCRA hearings should not be required to hear from trial counsel and rule on what trial counsel said in off-the-record conversations with the defendant.

¶ 14 As noted, I recognize that this issue has been addressed in *Morrison*. However, I would hope that the Pennsylvania Supreme Court would consider this issue and the holding of *Morrison*. Hopefully, in the interim our trial judges and prosecutors will more carefully ensure that the minimum requirements of a guilty plea colloquy are met and that a few minutes more are taken to make a record that a defendant pleading guilty actually knows what he or she is doing.

¶ 15 Therefore, I concur.