J-S75030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MALDONADO CRUZ :
:
Appellant : No. 2365 EDA 2017

Appeal from the PCRA Order June 29, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010176-2011,
CP-51-CR-0010456-2011, CP-51-CR-0012429-2011

BEFORE: PANELLA, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:                **FILED JANUARY 22, 2019**

Appellant Maldonado Cruz appeals from the order denying his first petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, after a hearing. Appellant asserts that the PCRA court erred in denying his petition because his open guilty pleas to attempted murder, possession of a firearm prohibited, possession of an instrument of crime (PIC), and criminal conspiracy to commit murder were induced by improper advice from counsel.[1] We affirm.

The relevant factual background of this matter includes the following. Appellant entered an open guilty plea on November 21, 2013, to three counts of attempted murder, three counts of possession of a firearm prohibited, three

_____

[1] 18 Pa.C.S. §§ 901, 2502, 6105, 907, and 903 respectively.

counts of PIC, and one count of criminal conspiracy to commit murder based upon the facts recited at Appellant's guilty plea hearing:

> With regards to the matter CP 0010176-2011, the shooting of Victor Shead, the Commonwealth would offer the following at trial: That on July [23] of 2010 at approximately 9:50 p.m., complainant Victor Shead was found shot in the area of 3123 Arbor Street in Philadelphia. He was found with gunshot wounds to the groin, stomach and leg. He was unable to provide any information and was taken to Temple Hospital in critical condition.
>
> The next day when the complainant was awake, he was interviewed and stated that he knows the offender, the male who shot him, as Burt, that he had known him for approximately eight years and had been selling drugs for Burt since he was twelve years old. He also indicated that Burt, the shooter, was arrested recently at that time for selling a large amount of drugs and had an open case in court and that he had seen him in the Criminal Justice Center when he was there for court and that the offender had been arrested for a shooting in the area of thirty-one hundred Hartville Street.
>
> Based on that information, officers prepared a photo array with [Appellant] as a suspect and on July [27] of 2010, detectives returned to Temple Hospital and re-interviewed the complainant, at which time he identified [Appellant] as the person he knows as Burt and the person that shot him.
>
> He further added that at the time of the shooting he was sitting on the steps of a vacant house. He saw [Appellant] coming down the street. He looked at him and stated, "What's up, Burt?" at which time [Appellant] pulled out a black revolver and shot him in the lower part of his body, striking him in the stomach, leg and groin.
>
> The complainant attempted to run away while shot and then [Appellant] pointed a gun at the victim's head and the gun made a clicking sound and did not go off. The complainant further stated he might have been shot by Burt because he had been accused of stealing drugs from another dealer's house and that other dealer, known to him as Jeff, and Burt worked together in drug sales.
>
> The Commonwealth would further show that the complainant was treated extensively and with surgical treatment at Temple Hospital

and did suffer serious bodily injury. [Appellant] is ineligible to possess a firearm as he has a conviction from 2006 for aggravated assault.

\* \* \*

With regards to CP 0012429-2011, this is the attempted murder of Gregory Hunt and conspiracy with Edwin Miranda.

The facts the Commonwealth would offer in that case are as follows: That on August [6] of 2010 at approximately ten a.m., the complainant Gregory Hunt and numerous males were in the area of Helen and Somerset Streets on a crowded corner. At this time the complainant, Mr. Hunt, was talking to several of his friends including a man by the name of Mike. [Appellant] and Mike were arguing over drug sales on the corner, insisting Mike was not permitted to be selling heroin on that corner, as it was owned by [Appellant] and Edwin Miranda.

The complainant Gregory Hunt rode up on his bike and had tried to intercede in the fight, explaining that no one was going to make any money if people were fighting on the corner and that it would draw attention of police. The complainant had seen [Appellant] before and knew him to go by Burt.

At that point he observed [Appellant] call co-defendant Edwin Miranda on his cell phone. The complainant knew Edwin Miranda to go by Poppo and worked with [Appellant] selling drugs on that corner.

Edwin Miranda pulled up in a silver Dodge Intrepid and while the complainant was standing right in front of the Dodge, [Appellant recognized Miranda.] Miranda put the Dodge in park, tried to open the door and exit while grabbing a gun from the dashboard, and as this was happening the [Appellant] leaned through the front passenger window and said, "I got these mother fuckers, just give it to me."

Miranda passed a gun to [Appellant], who grabbed it by the barrel. [Appellant] then turned to face complainant Gregory Hunt, racked the gun. The complainant Hunt tried to get away. At this time[, Appellant] fired numerous times. The complainant dove behind a truck but was struck repeatedly, approximately ten times, in his legs, thighs, calf and his buttocks. He also had a shot to the hand, which he stated testifying at the preliminary hearing was at the

- 3 -

time when he put his hand up to block his head as the gun was firing in that direction.

[Appellant] turned to the area of onlookers and fired off a few more shots in the area. There were numerous adults and children on the block. [Appellant] then got into the Dodge with Miranda, who sped off, running over the complainant's bicycle that was left in the area.

Numerous witnesses as well as Gregory Hunt, who were all available and were prepared to testify in this matter before the Court this week, identified defendant Edwin Miranda and [Appellant], and specifically multiple people identified [Appellant] as the person who fired the gun at Gregory Hunt.

Police officers recovered twelve [fired cartridge cases (FCCs)], nine millimeter FCCs, on that location. Neither of the defendants were identified at this time or were . . . located at this time. Warrants were issued August [11, 2010]. Edwin Miranda was arrested August [11, 2010]. Search warrants were executed. One black revolver was recovered as well as a rifle, but neither were used in this particular shooting.

Gregory Hunt was treated for an extensive period of time at Temple University Hospital. He was treated surgically for serious bodily injury inflicted to him by ten gunshot wounds.

* * *

[As to] CP 0010456, the shooting of Jose Crespo.

The Commonwealth would offer the following at trial: On September [25], 2010, at about 3:40 a.m. in the area of the twenty-nine hundred block of Waterloo Street, police found victim Jose Crespo in that area with gunshot wounds to his back and groin. He was transported to Temple Hospital in critical condition. Recovered from that scene were three nine millimeter FCCs.

During the course of the investigation, officers learned that the suspect might go by the name of Maldonado Cruz. At this time Maldonado Cruz was wanted on the two warrants for the shootings of Victor Shead and Gregory Hunt.

After the victim was awake, he was interviewed by detectives and provided information that he was on the block and he knew the male that shot him, that he was involved in a fight with the male and he knocked him down. The male got a gun and shot him. The

- 4 -

victim stated that he had tried to walk away when [Appellant] shot him in the groin and the back. He knew him from the area and knew him to sell drugs on that block. He identified that shooter as Maldonado Cruz.

Those three nine millimeter FCCs were sent to ballistics and did positively match the twelve nine millimeter FCCs that were recovered from the scene of the shooting of Gregory Hunt. That evidence would have been offered at all three trials per a motion to allow other acts that had been submitted by the Commonwealth.

A warrant was issued for [Appellant's] arrest as well on all three cases. [Appellant's] arrest took quite a bit of time. [Appellant] was eventually located by U.S. Marshals in Frankfort, Kentucky, and taken back to Philadelphia to face charges on all three of these shootings.

N.T. Guilty Plea, 11/21/13, at 11-19. Appellant agreed to the foregoing facts as the basis for his guilty pleas at the guilty plea hearing. *See id.* at 14, 17, and 20.

The PCRA court further noted that

[p]rior to accepting [A]ppellant's guilty plea[s], th[e trial] court reviewed the written guilty plea colloquy form signed by [A]ppellant and performed a[n] oral colloquy of [A]ppellant [in which the court ensured that Appellant knew that the maximum penalty he was facing for the matters was 55, 75, and 55 years of incarceration]. On January 27, 2014, th[e trial] court sentenced [A]ppellant to an aggregate term of thirty (30) to seventy (70) years' incarceration in a state correctional institution. . . .

On February 6, 2014, [A]ppellant filed a timely *pro se* Motion to Withdraw Plea of Guilty [asserting that trial counsel had informed him he would get a lesser sentence]. On February 7, 2014[,] Appellant's trial counsel . . . filed a Motion to Reconsider Sentence. Both of these motions were denied by th[e trial] court by Order of February 11, 2014. [Appellant did not take a direct appeal.]

On December 24, 2014, [A]ppellant filed a *pro se* Motion for Post Conviction Collateral Relief. On December 23, 2015[, A]ppellant's new appointed counsel . . . filed an Amended Post Conviction Relief Act Petition. On April 3, 2017, the [C]ommonwealth filed a

Motion to Dismiss [A]ppellant's PCRA petition. The PCRA petition was heard by th[e PCRA] court on June 27, 2017. At the hearing, Appellant testified that, prior to accepting his open plea, the [C]ommonwealth had offered him an incarceration period of "somewhere in the 25 to 50 range" but that his trial counsel told him that because of his "good relationship with the judge" he would receive a sentence "somewhere in the midst of 17 to 20 on my front end" and 40 or more years on the back end.

* * *

Appellant acknowledged during his direct examination that what he understood from his attorney's advice to plead open . . . was that it was based upon his attorney's experience and knowledge of the court, rather than anything inappropriate. . . . Appellant further testified that the only reason he pled guilty was because he was following his attorney's advice.

On cross-examination, [A]ppellant agreed that during the colloquy between himself and the court at his open guilty plea hearing, he answered "no" in response to the court's question as to whether he was promised anything in return for pleading guilty. Appellant testified that although he was not "promised" anything[,] he was told "what was most likely to happen was going to be." Appellant further acknowledged on cross that the court's colloquy included his being advised that the three cases to which he was pleading open carried potential terms of incarceration of 55, 75, and 55 years, respectively.

* * *

Appellant's trial counsel . . . then testified. [Trial counsel] denied making any promises to [A]ppellant that he would receive a certain sentence. He testified that he told [A]ppellant that the best he could hope for based upon the guidelines was 17 or 20 years [as a minimum sentence]. Trial counsel acknowledged informing [A]ppellant that the trial judge was a "fair" and "honest guy" and that counsel had known the trial judge for about 25 years and that the judge would follow the guidelines and look at the evidence in the case and impose a fair sentence.

. . . Trial counsel testified that he had informed [A]ppellant that the [C]ommonwealth was going to be able to prevail on at least one of the three cases against him as the testimony (of the victim) in that case had already been secured and that "even if the witness was gone there would be notes of testimony that would

allow the Commonwealth to proceed" against him and therefore that one case was "particularly strong" with "very strong evidence." Trial counsel testified that the "maximum penalties" [A]ppellant was facing on each of the three cases was "50-60 years." Trial counsel further testified that his client understood this and that it was a part of his decision[-]making process.

\* \* \*

Th[e PCRA] court then asked trial counsel whether [A]ppellant, during trial counsel's conversations with him prior to entering into the open guilty plea, had any difficulty understanding what counsel was saying about the charges and evidence against him, his options, the potential sentence, and counsel's advice as to what he would hope to try and get for him. Trial counsel responded to the question with "No. None whatsoever." Trial counsel testified that based upon the information counsel had given to him, [A]ppellant had made a fully informed decision.

[Following the hearing, the PCRA] court denied and dismissed [A]ppellant's PCRA petition and entered this decision as an Order of the Court on June 29, 2017. On July 2, 2017, Appellant filed an appeal of this court's Order and in response to the court's [Pa.R.A.P.] 1925(b) Order, Appellant filed a timely Statement of Errors Complained of on Appeal.

PCRA Ct. Op., 1/30/18, at 1-6 (citations and footnotes omitted).

The PCRA court complied with Pa.R.A.P. 1925(a). In its Rule 1925(a)

opinion, the trial court stated that

Appellant has failed to prove that his open guilty plea was not entered into in a knowing, intelligent, [and] voluntary manner. Further the testimony and evidence that was before th[e] court at both the guilty plea hearing and the PCRA hearing failed to prove that [trial counsel] failed to adequately explain the guilty plea process to [Appellant] or materially misled [Appellant] into believing that he was going to receive substantially less time tha[n] the 30 to 70 years imposed by the [c]ourt. Therefore, Appellant's claim must fail.

*Id.* at 14.

On appeal, Appellant raises the following question for our review: "Did the PCRA [c]ourt err when it dismissed this matter, after holding a hearing, even though [A]ppellant properly pled and would have been able to prove that he was entitled to PCRA relief and permitted to withdraw his guilty plea and go to trial?" Appellant's Brief at 3.

Appellant asserts that "representations made by trial [counsel] were not accurate and that they caused [Appellant] to plead guilty, rendering his decision to plead guilty less than knowing, intelligent and/or voluntary." *Id.* at 5. Appellant argues that counsel was ineffective because Appellant "was **assured** of a certain sentence," which he did not receive. *Id.* at 7 (emphasis in original).

Initially, we note that

Our standard of review of a trial court order granting or denying relief under the PCRA calls upon us to determine "whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record."

Pennsylvania has recast the two-factor inquiry regarding the effectiveness of counsel set forth by the United States Supreme Court in **Strickland v. Washington**, 466 U.S. 668 . . . (1984), as the following three-factor inquiry:

[I]n order to obtain relief based on [an IAC] claim, a petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

Trial counsel is presumed to be effective, and [the a]ppellant bears the burden of pleading and proving each of the three factors by a preponderance of the evidence.

The right to the constitutionally effective assistance of counsel extends to counsel's role in guiding his client with regard to the consequences of entering into a guilty plea.

> Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

Thus, to establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have plead[] guilty and would have insisted on going to trial." "The reasonable probability test is not a stringent one"; it merely refers to "a probability sufficient to undermine confidence in the outcome."

*Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

In *Commonwealth v. Fowler*, 893 A.2d 758 (Pa. Super. 2006), the defendant alleged ineffective assistance of his guilty plea counsel for inducing him to make an involuntary and unknowing plea. *Fowler*, 893 A.2d at 765. The defendant asserted that his guilty plea counsel promised him that he would not receive the statutory maximum sentence [of forty years' incarceration] for third-degree murder. The defendant's guilty plea counsel testified that she informed the defendant that

> she thought his sentence would be in the range of seven and one-half to fifteen, ten to twenty, or fifteen to thirty years. . . . However, [she] testified that she never guaranteed [the defendant] any specific result. . . . In addition, the plea court told

[the defendant] that he could receive a twenty-to-forty-year sentence and that there was no agreement about the sentence.

*Id.*

On appeal, the ***Fowler*** Court held that

[t]he record is clear that [the defendant] knew he risked a twenty-to-forty-year term of imprisonment and that no sentence was promised to him. He elected to proceed to plead guilty. . . . A defendant must be informed of the statutory maximum, and [the defendant] was given that information. Counsel's statements to [the defendant] about what she believed his likely sentence might be did not induce the guilty plea because any misconceptions [the defendant] had about his possible sentence were dispelled by the written and oral plea colloquies.

*Id.*

Here, as in ***Fowler***, Appellant was apprised of the maximum penalties he faced, and the PCRA court determined that trial counsel did not promise Appellant a specific result at sentencing.[2] ***See*** N.T., PCRA Hearing, 6/27/17, at 16-17, 26. Ultimately, the PCRA court determined that counsel's performance was adequate and "within the range of competence demanded of attorneys in criminal cases." ***See Fowler***, 893 A.2d at 765 (citation omitted); Trial Ct. Op., 1/30/18, at 14.

We agree with the PCRA court that Appellant is not entitled to relief since the record, including trial counsel's testimony at the PCRA hearing, supports the conclusion that Appellant was adequately apprised of the maximum sentence he might receive and was not guaranteed a particular sentence.

---

[2] As to Appellant's assertion that the Commonwealth previously offered him a plea deal of somewhere in the range of 25 to 50 years of incarceration, we note that the record does not reveal any such offer or deal.

Accordingly, since the PCRA court's findings of fact are supported by the record, we affirm the order denying Appellant PCRA relief. *See Barndt*, 74 A.3d at 192; *Fowler*, 893 A.2d at 765.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/22/19