J-S41023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| AUSTIN EUGENE GROSSNICKLE, II | : | |
| | : | |
| Appellant | : | No. 2040 MDA 2018 |

Appeal from the Judgment of Sentence Entered November 13, 2018
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0001759-2017

BEFORE:   LAZARUS, J., MURRAY, J., and STRASSBURGER*, J.

MEMORANDUM BY MURRAY, J.:                          **FILED AUGUST 16, 2019**

Austin Eugene Grossnickle, II (Appellant) appeals from the judgment of
sentence imposed after he pled guilty to fleeing or attempting to elude a police
officer, possession of a small amount of marijuana, possession of drug
paraphernalia, driving under the influence of a controlled substance (DUI),
recklessly endangering another person (REAP), tampering with or fabricating
physical evidence, resisting arrest, disorderly conduct,[1] and other related
summary offenses.  Upon review, we affirm.

Appellant's charges arose from an incident that occurred on October 17,
2017, when Appellant fled from Pennsylvania state troopers in his vehicle at
speeds in excess of 110 miles per hour while under the influence of a

---

[1] 75 Pa.C.S.A. § 3733(a), 35 P.S. § 780-113(a)(31)(i), 35 P.S. § 780-
113(a)(32), 75 Pa.C.S.A. § 3802(d)(1)(i), 18 Pa.C.S.A. § 2705, 18 Pa.C.S.A.
§ 4910(1), 18 Pa.C.S.A. § 5104, and 18 Pa.C.S.A. § 5503(a)(4).

---

* Retired Senior Judge assigned to the Superior Court.

controlled substance. *See* Trial Court Opinion, 4/11/19, at 1. When apprehended, Appellant admitted to troopers "that he ate a marijuana roach during the chase." *Id.*

On September 28, 2018, Appellant appeared before the trial court and entered his guilty plea. The trial court sentenced Appellant to two-and-a-half to eight years of incarceration on November 13, 2018.[2] Appellant filed a timely post-sentence motion, which the trial court denied on November 27, 2018. Appellant filed this appeal on December 14, 2018.

Appellant presents the following issue on appeal:

I.     DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IMPOSING CONSECUTIVE SENTENCES AGGREGATING TO TWO AND ONE HALF (2 1/2) TO EIGHT (8) YEARS IN A STATE CORRECTIONAL INSTITUTION FOR FLEEING, DUI (A FIRST OFFENSE), POSSESSION OF A SMALL AMOUNT OF MARIJUANA AND PARAPHERNALIA, RECKLESSLY ENDANGERING [ANOTHER PERSON], RESISTING ARREST, AND TAMPERING WITH EVIDENCE BASED UPON THE APPELLANT'S HISTORY AND CHARACTERISTICS, EXTENSIVE TIME SERVED, AND THE NATURE OF THE OFFENSES?

Appellant's Brief at 4.

---

[2] The original November 13, 2018 sentencing order accurately reflected Appellant's individual sentences, but erroneously calculated Appellant's aggregate minimum sentence as 3 years. *See* Order, 11/13/18, at 3. The Supreme Court has held that "under limited circumstances, even where the court would normally be divested of jurisdiction, a court may have the power to correct patent and obvious mistakes." *Commonwealth v. Klein*, 781 A.2d 1133, 1135 (Pa. 2001). During the pendency of this appeal, the trial court recognized its mathematical error and on March 12, 2019, issued an order reflecting that Appellant's "aggregate period of state incarceration is two and a half (2½) years and the maximum is eight (8) years." Order, 3/12/19. Neither Appellant nor the Commonwealth take issue with the corrected order.

Appellant challenges the discretionary aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." **Commonwealth v. Buterbaugh**, 91 A.3d 1247, 1265 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." **Id.** We conduct this four-part test to determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post-sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

**Commonwealth v. Baker**, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." **Commonwealth v. Dodge**, 77 A.3d 1263, 1268 (Pa. Super. 2013) (citations omitted).

Here, Appellant has complied with the first three prongs of the test by raising his discretionary sentencing claim in a timely post-sentence motion, filing a timely notice of appeal, and including in his brief a Rule 2119(f) concise statement. **See** Appellant's Brief at 7-8. Therefore, we examine whether Appellant presents a substantial question for review.

Appellant argues that his sentence is excessive. He claims that the court "improperly afforded no more than a perfunctory consideration to the Appellant's history, characteristics, and rehabilitative needs," and that it "failed to properly consider the Appellant's struggles with substance abuse as part of a self-medicating regiment [*sic*] for adverse mental conditions." Appellant's Brief at 11-12. This argument raises a substantial question. *See Commonwealth v. Swope*, 123 A.3d 333, 340 (Pa. Super. 2015) ("This Court has also held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question.") (citations omitted). Appellant also argues that the trial court failed to cite "legitimate factors" in imposing an aggravated-range sentence at his REAP conviction. Appellant's Brief at 12. This claim likewise raises a substantial question. *See Commonwealth v. Booze*, 953 A.2d 1263, 1278 (Pa. Super. 2008) ("[A]n allegation that the court failed to state adequate reasons on the record for imposing an aggravated-range sentence . . . raises a substantial question for our review.") (citations omitted).

We review Appellant's claims mindful of the following:

Sentencing is a matter vested in the sound discretion of the sentencing judge. The standard employed when reviewing the discretionary aspects of sentencing is very narrow. We may reverse only if the sentencing court abused its discretion or committed an error of law. A sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or

arrived at a manifestly unreasonable decision. We must accord the sentencing court's decision great weight because it was in the best position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime.

**Commonwealth v. Cook**, 941 A.2d 7, 11-12 (Pa. Super. 2007) (citations omitted).

The relevant portion of the Pennsylvania Sentencing Code states:

In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. . . . In every case in which the court imposes a sentence for a felony or misdemeanor . . . the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

42 Pa.C.S.A. § 9721(b).

The Sentencing Code directs that when a trial court imposes an aggravated range sentence, "it shall state the reasons on the record." 204 Pa. Code § 303.13. We have explained:

The [trial] court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b). However, the record as a whole must reflect due consideration by the court of the statutory considerations enunciated in that section.

**Commonwealth v. Coulverson**, 34 A.3d 135, 145-46 (Pa. Super. 2011) (citations omitted). Further, "[w]hen a sentencing court has reviewed a pre-sentence investigation report, we presume that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence."

- 5 -

***Baker***, 72 A.3d at 663 (citing ***Commonwealth v. Fowler***, 893 A.2d 758, 767

(Pa. Super. 2006)). We instructed:

> [i]n imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. However, where the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Additionally, the sentencing court must state its reasons for the sentence on the record. 42 Pa.C.S.A. § 9721(b). The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the pre-sentencing report; thus properly considering and weighing all relevant factors.

***Fowler***, 893 A.2d at 767-68 (citing ***Commonwealth v. Boyer***, 856 A.2d 149,

154 (Pa. Super. 2004)) (citations omitted).

At sentencing, the trial court stated that it had reviewed the entirety of

Appellant's pre-sentence investigation report. N.T., 11/13/18, at 4. Before

imposing Appellant's sentence, the trial court commented at length:

> I did receive a pre-sentence report and I reviewed the entire report. I'll note, [Appellant has] been committed for over a year at the Lycoming County Prison. He's 30 years old, he has no dependents, he has a GED education, he's single. A Risk Needs Assessment was done. He is a maximum risk. 44 percent. I really don't know what the percentages mean or what the numbers mean. I know what maximum and minimum and medium mean and I'll talk about that a little bit later.
>
> He did say that he got into a fight with his girlfriend and left the house. He didn't pull over. He went on a high speed chase, he had THC and cocaine in his system, maybe alcohol.

His prior record includes a conspiracy to commit robbery by a threat of serious bodily injury, a felony one offense. That was back in 2007. He did time at -- if I remember correctly, three separate state correctional facilities and we'll get to that as -- as well. He did indicate that he has alcohol problems, narcotics problems, and psychiatric indicating he was diagnosed at Rockview -- SCI Rockview with bi-polar, manic depression, and ADHD.

He's -- he's got an employment history, which isn't necessarily bad. He worked three years in the landscaping business and then, if I remember correctly, he got some automobile skills or mechanic skills in prison and he was working as a mechanic. He indicated that he had a normal childhood growing up. He doesn't remember his parents abusing any controlled substances or alcohol.

In 2001 he was charged with criminal trespass and was placed on juvenile probation. He began using marijuana at the age of 12 and then progressed to alcohol and cocaine when he was 25. In 2007, that was when he was sent to SCI Pine Grove for the robbery, conspiracy, and possession with an instrument of crime. He did three years and then was released to state parole.

He started using drugs and alcohol daily. Violated after being out for only five months. Then he was sent to Rockview where he was given the diagnosis of bi-polar, manic-depressive, and ADHD. He spent some time in their mental health unit and then was transferred to Waymart where he was receiving mental health treatment. He was prescribed some medications two months prior to him maxing out his five year sentence, but according to the pre-sentence report, he stated, after I maxed out, I stopped taking my meds because nobody was supervising me. That's when I started medicating with alcohol and marijuana. I weaned myself off of alcohol by switching to cocaine.

He did receive vocational training at Pine Grove as a mechanic. While he's been incarcerated, he attends AA/NA, he completed anger management and some drug and alcohol treatment that the prison offers. The recommendation is that he be placed in some sort of dual diagnosis treatment.

Looking at the LSI-R, it has the risk as a maximum, the possibility of recidivism as a maximum, and he's got needs with

alcohol and controlled substances, financial education, and employment. Criminal history, medium. With a prior record score of three, the offense gravity score of a five on the fleeing, it's a six to 16 month standard range; 15 days on a small amount, that's really an RS; paraphernalia is RS to three; DUI controlled substance is RS to three; recklessly endangering another person is RS to less than 12; tampering with evidence, RS to four; resisting arrest, RS to four; disorderly conduct, RS to three. And it's an open plea.

The CRN and assessment indicate that he has a problem drinking and a problem -- elicit [*sic*] controlled substance problem. Serious evidence that the controlled substances -- his use was a pattern that affected his mental health. He was smoking marijuana every day, using LSD one to two days a week, once or twice a month using oxycodone, cocaine every day.

As I said, he's presently 30 years old. Looks like he's been using controlled substances since -- for 18 years, although it progressed.

\* \* \*

[Appellant], this is -- well, all sentences are -- are difficult, but there are a couple things here that -- that concern me and that I can't ignore. I can't ignore the fact that when you went to jail and you were released, you went back to controlled substances and -- and alcohol. When you went to jail the second time and they gave you your diagnosis and they put you on medications, you eventually maxed out and then you stopped taking them because nobody was supervising you, and then you went back to self-medicating.

And that was over a -- a period of time. If -- if I look at this, 2007 -- let me see when [you] were sentenced. Sentenced on -- on October 17th of 2007, so even if I went five years from there, that takes us to 2012, so this happens in 2017, almost five years later, and during that -- I'm assuming during that five year period of time, you didn't do anything to address your substance abuse, which you admitted you went to almost immediately, nor did you do anything to address any mental health issues.

The other thing that I can't ignore is the fact that I don't -- don't have anything that says your mental health issues

contributed or somehow caused you to act a certain way. Dr. Calvert has testified in court for me on a [handful] of occasions and she differentiates mental health issues, some which she calls serious mental health issues which cause a person to act a certain way, and others that would not necessarily cause somebody to act a certain way, but might give them some -- some issues. There's no evidence here that you were in some bi-polar manic phase or some bi-polar incident that then caused you to do this. As your mom said, you know, you just -- it's almost this impulse that you can't control. And sometimes that's associated with Bi-polar Disorder, but -- so that -- that concerns me significantly.

I can't ignore the facts of this incident. I mean, I can't ignore that, you know, on a Tuesday at 9:00 in October, where people are going to be out, people might be riding their bikes, people use that bike path all the time. You know, I'm not a fisherman so I don't know if people are down there fishing. But you're going over 100 miles an hour up on, you know, 180, and then you're flying through down in that area and then you actually go on the bike path. I mean, we're really lucky. When I say we, I mean you, me, the community. We're lucky you didn't kill, you know, a bunch of people.

I mean, this type of behavior is very, very, very serious. And it's very, very, very dangerous. It's -- it's not something in which I am willing or do I think I should give you a time served county sentence. I do agree with [defense counsel] that you might be better served having county resources available to you, but it's not like I have an option where I can give you Drug Court, it's not like I have an option where you apply or I can give you DUI Treatment Court, something along those lines. But at this point, I have to be concerned about protecting the public and I have to be concerned about the nature of this offense.

\* \* \*

In addressing the purposes of sentencing, the [c]ourt is primarily concerned with the nature of this offense and protecting the public. In addressing [Appellant's] rehabilitation needs, the [c]ourt notes that [Appellant] has had a substantial period of time to address his rehabilitation needs, but chose not to address such. He had opportunities while on state parole, he had opportunities when he was released after maxing out his state prison sentence, and he had opportunities continuing through the date of the

- 9 -

offense. [Appellant] has shown through his prison conduct that he can participate in treatment successfully. Unfortunately, when [Appellant] is left to his own devices, he choose not to participate in treatment. As he admitted, he stopped taking his medications because nobody was supervising him and he started to self-medicate. [Appellant's] choice not to address his substance abuse issues and his mental health issues creates a huge dilemma to the [c]ourt -- I mean, for the [c]ourt. Because of [Appellant's] choices, he is a clear danger to the public. In this particular case, the dangers were of a significant extent and degree. The [c]ourt is greatly concerned that if the proposed treatment and if prior sanctioning did not work to change [Appellant's] behaviors and choices, there's no reason to think that they would work at this time. The [c]ourt is hopeful that the minimum sentence with credit for time served would be sufficient and that [Appellant] could successfully "walk off" his parole, but is still concerned given [Appellant's] history. Finally, offenses of this magnitude are of such a significant impact on the community that a lesser sentence would diminish the seriousness of the offense.

N.T., 11/13/18, at 4-7, 13-16, 18-19.

Our review of the record — including the trial court's detailed remarks — leads us to conclude that the court considered the appropriate factors when imposing Appellant's sentence. In addition to stating it had reviewed Appellant's pre-sentence investigation report, the court specifically discussed Appellant's age, education, criminal history, mental health and substance abuse problems, employment history, high recidivism risk, and rehabilitative needs. The court further noted the applicable standard range sentences, and discussed the facts attendant to Appellant's underlying convictions and the serious nature of Appellant's crimes, concluding that Appellant posed a danger to the community.

In sum, the record belies Appellant's contention that the court's consideration was "perfunctory." Rather, the record reflects that the trial court weighed the appropriate factors and provided adequate reasons for Appellant's sentence. We discern no error or abuse of discretion by the trial court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/16/2019