J-S23011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANITA D. TREJO | : | |
| | : | |
| Appellant | : | No. 2376 EDA 2023 |

Appeal from the Judgment of Sentence Entered July 19, 2023
In the Court of Common Pleas of Bucks County
Criminal Division at No: CP-09-CR-0006234-2021

BEFORE: STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY STABILE, J.:          **FILED OCTOBER 28, 2024**

Appellant, Anita D. Trejo, appeals from the judgment of sentence imposed on July 19, 2023, made final by the denial of her post sentence motion on August 16, 2023. Her convictions of aggravated assault by vehicle while driving under the influence ("DUI") and DUI-highest rate arose from a motor vehicle accident that occurred on September 26, 2021, after which Appellant was transported to Abington Memorial Hospital for treatment. In addition to challenging the discretionary aspects of her sentence, Appellant contends that the trial court erred in allowing testimony regarding her blood alcohol content ("BAC") results generated for Appellant's hospital treatment. Upon review, we affirm.

The trial court aptly summarized the factual and procedural background:

_____

[*] Retired Senior Judge assigned to the Superior Court.

Appellant was driving to her boyfriend's house after indulging in an alcoholic drink – a Long Island Iced Tea – from a local bar, Debbie's Place. As she approached the intersection of Street Road and Willow Penn Drive in Southampton Township, she failed to yield to oncoming traffic and made a left-hand turn into another vehicle driven by Sean Breslin (hereinafter "Mr. Breslin") with Alyssa Wawrzyniak (hereinafter "Victim") in the front passenger's seat. Mr. Breslin had the right-of-way and attempted to avoid the collision but did not have enough time or distance to do so. Mr. Breslin's vehicle rolled and hit a guardrail and he testified that when his car came to a stop, he looked over at Victim and noticed "she had blood coming out of her mouth and she looked dead." Mr. Breslin dragged Victim, who was "unconscious and not moving [with her] eyes wide open" out of the car and a bystander asked to perform CPR until police officers arrived. Mr. Breslin testified that he was in shock.

Mr. Breslin sustained a burn on his forehead and nose and a cleft ankle, which required physical therapy and still makes it difficult for him to drive for long periods of time. Victim, then just 21-years-old, sustained numerous, severe injuries including a fractured right femur, a fractured left humerus, a fractured jaw, and [a] hole in her heart. These injuries required four extensive surgeries, including heart surgery, and left Victim with a rod in her leg, a plate in her arm, and plate in her jaw. [Victim] remained in the hospital for two weeks after the collision and had to undergo months of physical therapy. She was unable to walk without the assistance of a walker and had to be on a liquid diet for two months because she was unable to chew solid foods. At the time of trial, approximately 18 months after the collision, Victim still had extensive, noticeable scars from her injuries. Additionally, Victim testified that she continues to suffer from anxiety that happens when she is in the car and approaching an intersection and that she is no longer able to enjoy activities such as ice skating, roller skating, and hiking and the pain has impacted her ability to work. Appellant's BAC at the time of the collision was 0.21 – over two times the legal limit.

After a trial by jury, on March 29, 2023, Appellant was found guilty of Aggravated Assault by Vehicle while [DUI], [DUI]: General Impairment – first offense, [DUI]: Highest Rate of Alcohol – first offense, and Vehicle Turning Left. Sentencing was deferred for 90 days to obtain a Pre-Sentence Investigation Report (hereinafter "PSI").

Trial Court Opinion, 11/14/23, at 1-3. On July 19, 2023, Appellant was sentenced to 18 to 48 months of incarceration with 12 months of consecutive probation. Appellant filed a post sentence motion, which was denied. This timely appeal followed. Both the trial court and Appellant have complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issues:

A. Did the trial court err in permitting the Commonwealth to introduce evidence of Appellant's medical records?

B. Did the trial court abuse its discretion in sentencing Appellant by failing to consider all relevant factors, by imposing a manifestly excessive sentence and by relying on the nature of the offense and other improper factors?

Appellant's Brief at 5.

Appellant first claims that the trial court erred in permitting the Commonwealth to introduce Appellant's medical records "for the purpose of showing the results of [a] lab test as to Appellant's BAC. In doing so, the [trial] court exceeded the permissible use of hospital records, in violation of Appellant's confrontation rights." *Id.* at 14. Additionally, Appellant argues that her blood was drawn for purposes of litigation and not for medical treatment, and as such, the toxicology report was inadmissible hearsay. *Id.* at 21-23.

Recently, this Court held that a toxicology report prepared for medical treatment was not testimonial in nature and therefore, not subject to the protections of the Confrontation Clause. *See Commonwealth v. Banko*, 268

A.3d 484 (Pa. Super. 2022), *appeal denied*, 279 A.3d 1176 (Pa. 2022). The Confrontation Clause "prohibits out-of-court **testimonial statements** by a witness unless the witness is unavailable and the defendant had a prior opportunity for cross-examination." *Id.* at 487 (citation omitted) (emphasis in the original).

In *Banko*, the defendant was transported to the hospital following a motor vehicle accident. *Id.* at 487. The hospital drew his blood into several trauma panels as part of their standard procedure. *Id.* "The panels were placed by a lab tech into a Ziploc bag and were sent through a pneumatic tube to the lab" where the samples were then centrifuged by a lab assistant, who testified to the process at trial. *Id.* at 487-88.

After a sample is centrifuged, "a medical technologist places the tube on the Roche machine, where a reagent is added, causing a reaction. A calibration curve then produces a BAC result that is entered in the computer." *Id.* at 488. "Basically, the technologist opens the tube, places it in a rack, hits a button, and 10 minutes later you have results, which are automatically entered into the computer and auto-filled in the patient's medical record." *Id.* (quotation marks and citation omitted).

After an extensive analysis of the Supreme Court of the United States' decisions in *Crawford v. Washington*, 541 U.S. 36 (2004), *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), as well as this Court's prior decision in *Commonwealth*

*v. Barton-Martin*, 5 A.3d 363 (Pa. Super. 2010), we concluded that the defendant

> fail[ed] to appreciate one critical distinction between the case before us and the ones on which he relies. In each of those cases, the statement at issue was the product of a police investigation following an arrest; the primary purpose for the statement was to support an arrest for DUI (**Barton-Martin** and **Bullcoming**), to support an arrest for cocaine possession (**Melendez-Diaz**), and to support an arrest for assault and attempted murder (**Crawford**). In other words, the primary purpose of the statements was to create an out-of-court substitute for trial testimony. By contrast, as detailed above, Appellant's blood was tested as part of his hospital treatment following an automobile accident. Again, as the trial court observed, the machine on which Appellant's blood was analyzed did not conduct its analysis in preparation of the trial, but rather for medical purposes only, as it states on the toxicology report. Accordingly, these tests are conducted and results maintained in the regular course of business (medical treatment).

*Banko*, at 491-92 (quotation marks and citation omitted). Thus, *Banko* distinguished, in the context of DUI, a blood draw performed at the direction of a law enforcement officer for purposes of future litigation versus a blood draw by hospital staff for purposes of medical treatment. The latter, we concluded, is not testimonial in nature and not subject to the protections of the Confrontation Clause. *Id.* at 492.

The facts of this case are almost identical to *Banko*. Following the motor vehicle accident in this case, Appellant was transported to the trauma unit at Abington Memorial Hospital. N.T., Trial 3/28/23, at 19. Joseph Kane, a paramedic at Abington Memorial, testified that when a trauma patient comes into the hospital, he takes several blood samples for testing, including a

- 5 -

toxicology screen. *Id.* at 164, 186. Staff at Abington Memorial utilize a vial with either a red or gold top to indicate that a sample is for a toxicology screen. *Id.* at 164, 187. This is distinguished from a vial with a gray top, which is used when a blood sample is drawn by hospital staff at the direction of police. *Id.* at 195.

Per hospital protocol, Mr. Kane drew Appellant's blood in the trauma unit and passed the samples off to a nurse while he remained with Appellant. *Id.* at 190-91. In this case, Mr. Kane handed Appellant's blood samples to Denise Fowler. *Id.* at 187. Appellant's medical records indicate that Mr. Kane was the person who drew her blood, the time that it was drawn, and that it was given to Ms. Fowler. *Id.* at 189.

The laboratory at Abington Memorial Hospital is accredited by the College of American Pathologists and is approved by the Pennsylvania Department of Health to test blood. *Id.* at 160. Herbert Auerbach, M.D., Director of the Clinical Laboratory at Abington Memorial, testified that his lab follows the standard operating procedures promulgated by the College of American Pathologists. *Id.* He explained:

> Specimens are obtained from patients brought into the emergency room. They are barcoded with a 2-D barcode, at the bedside. And then the specimens are transported to the laboratory via a pneumatic tube similar to the pneumatic tubes we see at banks.
>
> The specimens are received at the pneumatic tube station in the laboratory. They are removed from the specimen canister where they are barcoded, scanned, and placed on the analysis system. The analyzers at Abington Hospital are robotic. So once the tube is received into the laboratory via barcode scan, it is placed on the

robotic analyzer, and **the robotic analyzer actually handles all the testing**. There is no human intervention until the results are reviewed. Sometimes results are reviewed. Sometimes they pass directly to the patient's medical chart depending on the values.

\* \* \* \*

So we have medical technologists who remove the patient's specimen from the pneumatic tube cannisters, as I said. They scan them into the barcode scanner. And then they're just placed on a tray where a robotic arm actually removes the tubes and places them on a track. And it goes on down the track to the actual individual analyzers where they're analyzed.

*Id.* at 161-62 (emphasis added) (cleaned up). Once the specimens are tested, "the tubes travel to a module via the track and are automatically capped and them placed into storage, a refrigerated storage box by these robotic arms." *Id.* at 166.

The Abington Memorial lab is almost fully automated and undergoes daily quality control tests. *Id.* at 162. Samples with known quality control values are tested, and if the results fall outside a certain range, the machine automatically locks and there is no further testing until it is investigated. *Id.* Additionally, every four months the Department of Health sends samples with unknown values to the lab and the analyzer must test them and submit the results to the state to see if they values are correct. *Id.* at 163.

Regarding alcohol testing specifically, Dr. Auerbach testified that the analysis is performed by the Roche Cobas Analyzer. *Id.* at 165. The entire process is computerized and there is no human interaction "unless there's a so-called critical value where a value exceeds a certain threshold." *Id.* at 166. The results are automatically added to the patient's medical record. *Id.* Dr.

Auerbach stated that in the last twenty years, their lab's error rate relative to alcohol testing, is negligible, if any error at all. *Id.* at 167.

Appellant argues *Banko* is distinguishable here because the responding officer suspected Appellant was driving under the influence, followed the ambulance to the hospital and was informed that Appellant's blood was drawn by hospital staff. Appellant's Brief at 21. She argues that "[n]obody from the hospital was called to testify that the blood was taken in order to treat Appellant's medical condition;" therefore, the blood was "clearly taken in anticipation of litigation." *Id.*

The record belies this argument. Mr. Kane testified that he drew Appellant's blood in the emergency room as part of his standard procedure for trauma patients.

Appellant cites Section 3755 of the Motor Vehicle to support her argument that her blood was taken in anticipation of litigation. *Id.* at 21-22. Section 3755 states:

> If, as a result of a motor vehicle accident, the person who drove, operated or was in actual physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of section 3802 (relating to driving under the influence of alcohol or controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing to the Department of Health or a clinical laboratory licensed and approved by the Department of Health and specifically designated for this purpose. This section shall be applicable to all injured occupants who were capable of motor vehicle operation if the operator or person in actual physical control of the movement of the motor vehicle cannot be

determined. Test results shall be released upon request of the person tested, his attorney, his physician or government official or agencies.

75 Pa.C.S.A. § 3755(a). Appellant argues that her medical records are "clearly testimonial in nature" because Section 3755 requires emergency room personnel to take blood and submit it for chemical testing if certain circumstances exist, i.e., the driver of a motor vehicle was involved in an accident and suspected of DUI. Appellant's Brief at 22.

There is no evidence of record that Appellant's blood was taken pursuant to Section 3755. There is, however, testimony that her blood was drawn pursuant to Abington Memorial Hospital's standard protocol for trauma patients in the emergency room. As such, Appellant's attempt to distinguish *Banko* from the facts herein fails.

As in *Banko*, the blood was drawn from Appellant and placed into a pneumatic tube for delivery to the hospital laboratory where a lab assistant placed the tube into an automated machine which conducted chemical testing on the blood. The automated machine, as in *Banko*, reported the results directly into the Appellant's medical records for the hospital to rely upon for treatment. Like *Banko*, a laboratory supervisor testified to the calibration and quality control measures that are employed to assure the accuracy of the results. These circumstances establish that the blood draw was not done for testimonial purposes. Thus, *Banko* controls our disposition, and we conclude that Appellant's blood was drawn for medical purposes and as such, the BAC

results were non-testimonial, and the records were properly admitted under the business records exception to the hearsay rule.

Appellant next challenges the discretionary aspects of her sentence. Challenges to the discretionary aspects of sentencing are not entitled to appellate review as a matter of right. *Commonwealth v. Clemat*, 218 A.3d 944, 959 (Pa. Super. 2019). Rather, such challenges are considered petitions for allowance of appeal, and an appellant must invoke our jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect pursuant to Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *Id.*

Here, Appellant filed a timely notice of appeal, properly preserved the issue in her post-sentence motion, and her brief complies with Rule 2119(f). Therefore, we must determine whether Appellant has raised a substantial question.

> A substantial question will be found where an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process. At a minimum, the Rule 2119(f) statement must articulate what particular provision of the code is violated, what fundamental norms the sentence violates, and the manner in which it violates that norm.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014).

- 10 -

In Appellant's Rule 2119(f) statement, she argues that her sentence was manifestly excessive and unreasonable because the trial court failed to consider all relevant factors (family history, age and rehabilitative needs) and relied upon improper factors (the victim's injuries, Appellant's lack of remorse and lack of responsibility and her alcohol use). Appellant's Brief at 11-12. "[A]n averment that the court sentenced based solely on the seriousness of the offense and failed to consider all relevant factors raises a substantial question." ***Commonwealth v. Macias***, 968 A.2d 773, 776 (Pa. Super. 2009) (citation omitted).

Appellant appears to make three related challenges: (1) to the information and conclusions within the PSI; (2) to the evidence underlying the trial court's determination that Appellant lacked remorse; and (3) to the trial court's focus on the nature of the offense, the victim's injuries, and its failure to consider other statutory criteria under 42 Pa.C.S.A. § 9721(b). Appellant's Brief at 27-30. Though the question is close, we will assume that Appellant raises a substantial question and proceed to the merits of her argument.

We review a sentencing court's determination for an abuse of discretion:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Id.* at 132. A sentencing court must state its reason for the sentence on the record. 42 Pa.C.S.A. § 9721(b); ***Commonwealth v. Fowler***, 893 A.2d 758, 767 (Pa. Super. 2006). This can be satisfied by a trial court stating on the record that it reviewed the pre-sentence investigation report. ***Fowler***, 893 A.2d at 767. Our Supreme Court has stated:

> Where [a] pre-sentence report exists, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention in engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988).

Appellant's sentence of 18 to 48 months of incarceration for aggravated assault by vehicle while DUI was within the standard range of the sentencing guidelines. Aggravated assault by vehicle while DUI has an offense gravity score of 9, and combined with Appellant's prior record score of zero, the standard minimum range was 12 to 24 months of incarceration. Appellant's minimum sentence of 18 months is squarely within the standard guideline range.

At sentencing, Appellant objected to certain conclusions contained in the PSI regarding her alcohol use. Specifically, Appellant takes issue with the PSI's conclusion that she was drinking at home prior to the accident, as well as the notation that while her diagnosis of a fatty liver alone is not indicative of alcohol abuse, Appellant's doctor felt compelled to discuss her alcohol use. However, Appellant did not present any evidence at sentencing to refute these statements. *See Commonwealth v. Franklin*, 446 A.2d 1313, 1318 (Pa. Super. 1982) ("if counsel contests any portion of [the PSI], [the trial court] must afford counsel the right to offer evidence in rebuttal"). Moreover, the PSI has not been included in the certified record. *See Commonwealth v. Williams*, 715 A.2d 1101, 1103 (Pa. 1998) ("appellate courts are limited to considering only those facts that have been duly certified in the record on appeal"). Accordingly, we conclude that Appellant failed to present any valid ground for relief on this claim.

Moreover, the record belies Appellant's contention that the trial court failed to consider relevant statutory factors.[1] The trial court had the benefit of a presentence investigation when imposing Appellant's sentence. N.T., Sentencing 7/19/23, at 4, 31. Therefore, we presume the trial court "was aware of relevant information regarding the defendant's character and

_____

[1] In imposing a sentence of confinement, the trial court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant," as well as the sentencing guidelines. 42 Pa.C.S.A. § 9721(b).

- 13 -

weighed those considerations along with mitigating statutory factors."

*Fowler*, *supra.* Additionally, the trial court acknowledged the mitigating

evidence presented by Appellant:

> I have to say in this case, it's difficult because . . . you're here with good family support, you cared for your ill family members. You had a good job, never been arrested, never had a traffic ticket from what I could tell, and the likelihood to reoffend is low. So those are thing[s] that I've considered when addressing the facts of the case, the nature and character of the defendant and when we have the sentencing guidelines. And, of course, I've considered everything within the presentence report.

N.T., Sentencing, at 34.

Moreover, the trial court explained why it denied Appellant's request to

impose a sentence in the mitigated range of her sentencing guidelines:

> A 21 year old [is] scarred for life because you were drinking and driving and caused an accident, notwithstanding your protestations to the contrary and what you told the jury. You were drunk and you caused the accident, and they found those were the facts.
>
> So the need to protect the community . . . you can't even accept that you have an alcohol issue despite some findings or references in the documents. I'm not sure that's enough for me to say that she's got a severe alcohol problem. . . .
>
> I mean, a fatty liver is an indicator that there's an issue, but what really stood out as well is that three to four drinks a day, there times a [week], of course, you denied that as well but that's what you told the medical personnel at the hospital.
>
> So the Commonwealth is right. There's a need to protect the community because whether you drink as much as they believe or a little less, as you have suggested, it's still an issue. And so there's a need to protect the community and, of course, there's the need for your rehabilitation. . . .

- 14 -

> But I can't get past the lack of remorse that you've shown by blaming the other driver. That's really, really appalling, frankly. It's your right and I don't really hold that against you except to this extent: I don't believe it's a mitigated sentence because people who come in, admit that they've done something wrong, and they accept responsibility is working towards a mitigated sentence. She's done none of that.

*Id.* at 36. Thus, we see no abuse of discretion – the trial court properly considered the Section 9721(b) factors and any mitigating evidence.

Appellant also maintains that the trial court's repeated reference to her lack of remorse and lack of responsibility was improper. Appellant's Brief at 36-37. She contends that "the sole basis for the assertion that Appellant lacks remorse is the pre-sentence investigator's concern regarding her remorse." Appellant's Brief at 41.

"[I]t is undoubtedly appropriate for a trial court to consider a defendant's lack of remorse as a factor at sentencing, provided that it is specifically considered in relation to protection of the public, the gravity of the offense, and the defendant's rehabilitative needs." ***Commonwealth v. Bowen***, 975 A.2d 1120, 1125 (Pa. Super. 2009) (citing ***Commonwealth v. Begley***, 780 A.2d 605, 644 (Pa. 2001). However, "silence at sentencing may not form the basis of finding that a defendant failed to take responsibility for his crimes, and that silence at sentencing may not be the sole basis for finding that a defendant lacked remorse." ***Id.*** at 1127.

Here, the trial court noted that it found Appellant lacked remorse not due to her *silence*, but by her own testimony at trial. ***See*** N.T., Sentencing, at 37; ***see also*** N.T., Trial 3/9/23, at 86-115. Appellant testified: "I was just

- 15 -

making my left-hand turn on the yellow, and it was clear when I made my turn."[2]  *Id.* at 93.  Though Appellant did not explicitly blame Mr. Breslin, it was apparent through cross-examination that the defense's theory was that Mr. Breslin caused the accident, not Appellant.  *Id.* at 77-110.  Appellant's memory was impacted by the accident, and she had trouble recalling details of the accident, the aftermath and her time in the hospital.  *Id.* at 90, 93-94.

Appellant explained further that she did not ask about the condition of the occupants in the other vehicle because she "didn't know anything at the scene."  *Id.* at 96.  However, she did inquire once in the 18 months leading up to the trial with her attorney about the condition of the victims.  *Id.* at 96, 109-10.  Appellant was unaware of the extent of the female victim's injuries until she heard about them during trial.  *Id.* at 110.  Despite Appellant expressing that she was very sad about the injuries, she did not feel responsible for the accident.  *Id.* at 111.

The trial court did not abuse its discretion when it considered Appellant's lack of remorse and lack of responsibility, *based on her own testimony at trial*, as sentencing factors.  At most, the trial court noted that despite the mitigating evidence, Appellant's lack of remorse and lack of responsibility does

_____

[2] Mr. Breslin, the driver of the other vehicle, testified that he was travelling in the opposite direction as Appellant and intended to go straight through the light.  N.T., 3/27/23, at 57.  Before reaching the intersection, he saw the light turn yellow and Appellant's vehicle move into the left turn lane.  *Id.* at 57. He intended to drive through the intersection because he assumed Appellant would yield to him.  *Id.* at 58.  Unfortunately, Appellant did not, and turned her vehicle directly into Mr. Breslin's path.  *Id.* at 59-60.

not justify a mitigated sentence. **See** N.T., Sentencing, at 36. Accordingly, we conclude that the trial court did not abuse its discretion when imposing Appellant's sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/28/2024