J-S06035-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JUSTIN D. KLINK | : | |
| | : | |
| Appellant | : | No. 886 WDA 2025 |

Appeal from the Judgment of Sentence Entered April 14, 2025
In the Court of Common Pleas of Somerset County Criminal Division at
No(s): CP-56-CR-0000125-2024

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JUSTIN D. KLINK | : | |
| | : | |
| Appellant | : | No. 1091 WDA 2025 |

Appeal from the Judgment of Sentence Entered April 14, 2025
In the Court of Common Pleas of Somerset County Criminal Division at
No(s): CP-56-CR-0000725-2024

BEFORE: KUNSELMAN, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: March 25, 2026**

Appellant, Justin D. Klink, appeals from the judgment of sentence entered in the Court of Common Pleas of Somerset County on April 14, 2025. After a careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

The trial court summarized the relevant procedural history and facts as follows:

> In Case No. 125 Crim 2024, [Appellant] was charged by Information on January 2, 2024, with 14 criminal offenses, including possession of a firearm prohibited (felony of the second degree); firearms not to be carried without a license (felony of the third degree); five counts of driving under the influence (misdemeanors); possession of a controlled substance and possession of paraphernalia (misdemeanors) as well as various summary offenses.
>
> The charges arose as a result of a traffic stop conducted on U.S. Route 219 North in Somerset County on September 12, 2023. The arresting officer developed reasons to believe that the Defendant was driving under the influence and noticed a bag of marijuana in plain view in the vehicle. During field sobriety testing [Appellant] exhibited numerous clues of impairment. Upon receiving consent to search the vehicle, the trooper discovered numerous items of contraband including a gun and suspected controlled substances.
>
> [Appellant] entered a guilty plea to Case No. 125 Crim 2024 on January 30, 2025, admitting his guilt to DUI, 75 Pa.C.S. § 3802(D)(1)(H) (M) and possession of a firearm prohibited 18 Pa.C.S. § 6105(A)(1) (F2). The 6-month maximum sentence as to the DUI and the 10 year maximum sentence as to the firearms count, indicating an offense gravity score of 9 were written on [Appellant]'s signed guilty plea questionnaire.
>
> As to Case No. 725 Crim 2024, [Appellant] was also charged by Information filed on January 2, 2024, with one count of possession of firearm prohibited (F2) in violation of 18 Pa.C.S. § 6105(A)(1).
>
> The criminal complaint alleged that on or about May 21, 2024, while officers were serving an arrest warrant upon [Appellant]:
>
> > [Appellant] being a person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in

subsection (c) did possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth. TO WIT, [Appellant] was found in possession of a Walther P22, Serial # WA781800 where [Appellant] was convicted of an enumerated offense on 02/16/2006, namely CS 780-1 13(a)(30) Possession with Intent.

On January 30, 2025, prior to [Appellant]'s guilty plea hearing, the Commonwealth filed an Amended Information to include an additional count of possession of firearm prohibited under crimes code section 6105(c)(1) (M2), which the [trial court] approved by Order filed on February 3, 2025.

The written and signed guilty plea questionnaire indicated the statutory maximum sentence of 5 years and the offense gravity score of 7.

On the morning of [Appellant]'s sentencing hearing, March 31, 2025, [Appellant] filed a motion to withdraw his guilty pleas in both cases. Counsel for [Appellant] averred within the motion and during argument that he had previously advised his client that his prior record score was most likely between 2 or 3, but not higher than 4. Defendant's Motion to Withdraw Guilty Plea, ¶ 6. [Appellant] submitted that his guilty plea was not knowing, intelligent, or voluntary, given that it was entered based upon incorrect or mistaken information with regard to his Prior Record Score, and therefore, his probable sentence. The [trial court] denied the motion for the following reasons:

So, Mr. Klink, I've read the motion, again, it was handed to me today, but it's not very complex; it's ten paragraphs, so I did have the opportunity to read it, and I understand your reason for filing it in that obviously Attorney Carroll was trying to estimate your prior record score based on the information available at that time.

I'm certain he would have told you that - you know, he's doing the best he can with what he has to work with, but I can't imagine he told you with 100-percent certainty that was your prior record score, but I understand your -- your position now that you know

- 3 -

your prior record score is something other than what he thought it was going to be, again, based on the information available to him.

The law in Pennsylvania is that, again, the [c]ourt should liberally grant a Motion to Withdraw Guilty Plea that's filed before sentencing if there is some colorable claim of some innocence or something along those lines; but the problem, Mr. Klink, is when you entered your guilty plea, you completed a guilty plea questionnaire that has many questions in there that advise you of your rights, and you indicated that you were pleading guilty because you truly admitted that you were guilty of the crime that you plead to, and I asked you in my oral colloquy with you the very same question.

So it's completely inconsistent with you to stand there in front of me telling me I'm pleading guilty because I truly admit I'm -- that I'm guilty of this crime, but now to want to withdraw your plea because you don't like the sentence that is in the standard range of the sentencing guidelines. So, again, that is inconsistent with there being some colorable claim of innocence.

So for those reasons. I'm denying your Motion to Withdraw Your Guilty Plea. Again, it's more a matter of you being dissatisfied with the sentence that you're going to get than it is you believing that your guilty plea wasn't knowing, voluntary, and intelligent when in fact you stood before the [c]ourt and admitted that you were guilty of the crimes to which you pleaded guilty on.

So enter this Order:

And now, this 31st day of March, 2025, at the time scheduled for sentencing, and the defendant having filed a Motion to Withdraw Guilty Plea; it is ordered that the Motion to Withdraw Guilty Plea is denied. [...] Let us move to sentencing. Notes of Testimony, Hearing, March 31, 2025, pp. 5-7.

[Appellant] was then sentenced to an aggregate sentence of 36 to 96 months on all cases. More specifically, at Docket No. 125 Criminal 2024, on the charge of possession of a firearm prohibited under crimes code section 6105(A)(1) the Defendant was sentenced to pay costs, fines and undergo incarceration in a state correctional institution for not less than 36 months nor more than 96 months. He was given 352 days of credit for time served. As to the charge of driving under the influence under Vehicle Code Section 3802(D)(l)(ii), [Appellant] was directed to pay costs and fines and incarceration in the Somerset County Jail for not less than 72 hours nor more than 6 months.

At Docket 725 Criminal 2024, on the charge of possession of a firearm prohibited under crimes code section 6105(C)(1), [Appellant] was sentenced to pay costs, fines and undergo incarceration in a state correctional institution for not less than 5 months nor more than 60 months, with 61 days of credit for time served.

The sentences were directed to run concurrent with one another and concurrent with any other sentence [Appellant] may be serving.

Tr. Ct. Op. at 1-4.

Appellant filed a post-sentence motion on April 10, 2025. The trial court denied his motion on June 10, 2025. Appellant filed a timely notice of appeal on July 10, 2025. This appeal follows.

Appellant raises two issues on appeal:

1. Did the honorable trial court abuse its discretion in denying the Defendant/Appellant's motion to withdraw his guilty plea, by Order of March 31, 2025; in general, and, in particular, on the basis that the guilty plea was not knowingly, intelligently, and voluntarily made, because the Defendant/Appellant was incorrectly advised of his probable standard sentencing guideline's range at the time of his guilty plea?

2. Did the honorable trial court further abuse its discretion in denying Defendant/Appellant's post-sentence motion, further denying the Defendant/Appellant's motion to withdraw guilty plea;

in general, and, in particular, on the basis that the guilty plea was not knowingly, intelligently, and voluntarily made, because the Defendant/Appellant was incorrectly advised of his standard sentencing guideline's range at the time of his guilty plea?

Appellant's Br. at 2-3.

As these questions raise "essentially the same issue," Appellant combines them in his brief and "proceeds to argue them as one general issue." *Id.* at 7. This Court will also address them as a single issue; whether Appellant's request to withdraw his guilty plea before sentencing should have been granted on the basis that the plea was not entered knowingly, intelligently, and voluntarily.

We review a court's denial of a pre-sentence motion to withdraw a guilty plea for an abuse of discretion. *See Commonwealth v. Islas*, 156 A.3d 1185, 1187 (Pa. Super. 2017). However, while

> there is no absolute right to withdraw a guilty plea [and] trial courts have discretion in determining whether a withdrawal request will be granted[,] such discretion is to be administered liberally in favor of the accused; and any demonstration by a defendant of a fair-and-just reason will suffice to support a grant, unless withdrawal would work substantial prejudice to the Commonwealth.

*Commonwealth v. Carrasquillo*, 115 A.3d 1284, 1291-92 (Pa. 2015) (citing *Commonwealth v. Forbes*, 299 A.2d 268, 271 (Pa. 1973)).

The rationale stated on the record by the trial court for denying Appellant's pre-sentence request to withdraw his guilty plea, as reproduced above, was that Appellant's reason for requesting to withdraw his plea was "inconsistent with there being some colorable claim of innocence" and that

- 6 -

"[t]he law in Pennsylvania is that" a court should liberally permit the withdrawal of a guilty plea before sentencing "if there is some colorable claim of some innocence or something along those lines[.]" Tr. Ct. Op. at 3-4; N.T., 3/31/25, at 5-6. In this vein, the trial court's 1925(a) opinion further states that a "[d]efendant must make some colorable demonstration, under the circumstances, that permitting withdrawal of the plea would promote fairness and justice." Tr. Ct. Op. at 6. Because Appellant "repeatedly admitted his guilt," and "sought to withdraw his guilty plea without any assertion of innocence," the trial court found it proper to deny his request to withdraw his plea.

Appellant argues that a "colorable claim of innocence" is merely one "fair-and-just reason" to grant a request to withdraw a guilty plea prior to sentencing, but that it is not the only reason. Appellant's Br. at 13, 16. Appellant cites several cases for this proposition, demonstrating that our Court has found other fair and just reasons for permitting the withdrawal of a guilty plea. *Id.* at 14-15. Thus, Appellant argues, the trial court erred in finding that a claim of innocence is the sole reason to grant a request to withdraw a guilty plea. *Id.* at 16. We agree with Appellant that the trial court misstated the standard, and a claim of innocence is not the sole reason to permit a defendant to withdraw a guilty plea as it is well established that any demonstration "of a fair-and-just reason will suffice." *Carrasquillo, Forbes, supra*. Accordingly, to determine if reversal is required, we must decide if Appellant provided any fair and just reason to withdraw his guilty plea, and if so, if the trial court

abused its discretion in denying his request despite a sufficient reason to withdraw.

Appellant asserts that his attorney, not having the benefit of the presentence investigation, estimated at the time of Appellant's guilty plea what his prior record score (PRS) was, and accordingly, what the standard range of his sentence would be. Appellant's Br. at 5. The estimated PRS was based on Appellant's criminal history that his attorney had received from Appellant's prior counsel. *Id*. Counsel admitted to the trial court in the motion to withdraw guilty plea and to this Court in Appellant's brief that he advised Appellant that his estimated PRS was most likely between two and three, and at the highest, four. *Id*. When the Pennsylvania Commission on Sentencing submitted Appellant's guideline sentencing form, his PRS was listed as five. *See* Sentencing Form at 1, 2.

In addition to the trial court's determination that Appellant did not assert a claim of innocence, the trial court responded to Appellant's claim of being misinformed as to his PRS. The trial court reasoned that Appellant's attorney advised Appellant on his PRS and on the standard range for his sentence based on the information he had available to him at the time. The trial court indicated that Appellant's counsel did not state these numbers with certainty and did not tell Appellant that his estimates were definite. Tr. Ct. Op. at 3. Finally, the trial court states,

> Despite the allegation that he may have been misinformed of his
> exact prior record score and the sentencing ranges that could

apply, Defendant was well aware of the permissible or maximum range of sentences for all of the charges. Defendant also acknowledged that the ultimate sentence was within the discretion of the trial court. Moreover, Defendant was sentenced well within the standard guideline range.

*Id.* at 6.

Appellant asserts that his plea could not have been knowingly entered because of the inaccurate advice regarding his PRS. He states, "It is uncontested that undersigned counsel told him an incorrect PRS at the time of the entry of the plea, and that a higher than expected PRS resulted in the standard guidelines range for the highest offense as pled being higher than the defendant anticipated at plea." Appellant's Br. at 17.

In *Commonwealth v. Forrest*, 344 A.3d 1142 (Pa. Super. 2025) (unpublished memorandum),[1] the appellant's counsel admitted in writing to the trial court that he mistakenly advised his client that the minimum sentence he would be offered as part of the RRRI program would be 34 months as opposed to the correct calculation of 50 months. We opined that "this miscalculation directly impacted [the appellant's] understanding of the permissible ranges of sentences [] possible." *Id.* at *7.

[the appellant] suffered a manifest injustice because his plea was not entered knowingly, intelligently, voluntarily, and understandingly, and the trial court abused its discretion in

---

[1] We note that, pursuant to Pa.R.A.P. 126(b), unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value. We find guidance in the unpublished memorandum cited *supra* and find it to be persuasive in this matter.

denying his post-sentence motion to withdraw the plea. **See Commonwealth v. Bush**, 321 A.3d 960 (Pa. Super. 2024) [] (affirming grant to withdraw guilty plea based upon counsel issuing erroneous advice regarding likely length of sentence); **see also Commonwealth v. Cramer**, 170 A.3d 1206, 2017 WL 1952712, at *6 (Pa. Super. 2017) ("erroneous advice on how the law will affect parole and the duration of a defendant's true minimum sentence can affect the validity of a guilty plea"); **Commonwealth v. Hickman**, 2002 PA Super 152, 799 A.2d 136, 142 (Pa. Super. 2002) ("plea's validity may be compromised when counsel issues erroneous advice on how the law will affect the duration of a client's sentence").

**Id.** at *7-8.

Guided by these principles, to determine if Appellant's plea was knowingly entered in the instant case, we must decide if the actual sentencing ranges applicable to Appellant at the time of sentencing in light of his true PRS of five was different than the sentencing ranges as he was advised it would be with a lower estimated PRS at the time he made his guilty plea. The sentence actually imposed on Appellant is irrelevant to our inquiry because Appellant sought to withdraw his plea prior to sentencing and because applicable caselaw indicates that the relevant consideration when determining the validity of a guilty plea is the minimum and maximum sentence of which a defendant was advised.

The guideline sentencing form indicated that Appellant's guideline range was forty-eight (48) to sixty (60) months' incarceration in the standard range for his firearm offense, with a thirty-six (36) month minimum in the mitigated range. Sentencing Form at 1. The statutory maximum for the firearm offense is 120 months' incarceration. **Id.** at 1. For his DUI offense, the guidelines state

the statutory minimum of three (3) days and list as the standard range seventy-two (72) hours to three (3) months' incarceration. **Id.** at 2. The statutory maximum for his DUI offense is six (6) months' incarceration. **Id.** at 2.

Appellant's signed guilty plea questionnaire stated for a first DUI offense, the minimum sentence is three days' and a maximum sentence is six months' incarceration. GP Questionnaire, 1/30/25, at 1. For a DUI second offense, the minimum sentence is five to eight (5-8) days' incarceration and the maximum sentence is six (6) months' incarceration. **Id**. For his firearm offense, the questionnaire states that with an offense gravity score (OGS) of seven, the maximum punishment is five (5) years' incarceration. No minimum was listed. **Id.** at 2. For the firearm offense with an OGS of nine, the maximum punishment is ten (10) years' incarceration. No minimum was listed. **Id.** at 1. Appellant circled "yes" for the question, "Do you understand the maximum sentence and fines that can be imposed against you?" **Id.** at ¶ 38. Appellant further indicated his understanding that the judge is not bound by any agreement as to the sentence. **Id.** at ¶ 40.

Despite Appellant having been misinformed as to his PRS, this Court cannot discern how that impacted the advice he was given as to the maximum sentence for each offense he was facing. Appellant asserts that a "higher than expected PRS resulted in the standard guidelines range for the highest offense as pled being higher than the defendant anticipated at plea," Appellant's Br. at

- 11 -

17, but does not direct this Court to anywhere in the record where he was advised of a lower standard range or a lower maximum sentence than that listed on the final sentencing guideline form. Our review of the record indicates that the maximum sentences listed on the written guilty plea colloquy correspond to the maximum sentences listed on the guideline sentencing form.

Indeed, even in his motion to withdraw his guilty plea, Appellant's counsel admits that he provided inaccurate advice as to Appellant's PRS but does not submit that he incorrectly advised Appellant as to the standard range or maximum sentence of any offense. This is unlike in *Forrest, supra*, where counsel admitted, and this Court found, that the appellant was advised that his minimum sentence would be 34 months when the true minimum was 50 months. In *Forrest*, the attorney's miscalculation directly impacted the appellant's understanding of the sentence applicable to him. Here, counsel's mistaken estimate of Appellant's PRS did not change the applicable sentences Appellant was advised could be imposed on him.

We disagree with Appellant that "there is no logical distinction" between an error like in *Forrest* and incorrect advice as to a PRS or the standard guidelines range. Appellant's Br. at 16. We also disagree with Appellant's position that "knowledge as to the probable sentence is a fundamental part of entering into a plea knowingly." *Id.* at 8. "[T]here is no legal requirement that a defendant be aware of the guideline ranges in order to enter a valid guilty

plea. A defendant must be informed of the statutory maximum[.]" ***Commonwealth v. Fowler***, 893 A.2d 758, 765 (Pa. Super. 2006). Here, even if we found evidence that Appellant was misinformed to the standard guideline range, which we did not, Appellant was correctly informed as to the statutory maximums. ***See id.*** ("Counsel's statements to Appellant about what she believed his likely sentence might be did not induce the guilty plea because any misconceptions Appellant had about his possible sentence were dispelled by the written and oral plea colloquies."); ***see also Commonwealth v. Simmons***, No. 470 WDA 2025, at \*11 (Mar. 10, 2026)[2] (stating "Defendants are not required to be advised of the likelihood that any particular sentence will be imposed").

Therefore, we find that Appellant's plea was entered knowingly, intelligently, and voluntarily. While erroneous advice as to a defendant's sentence can be a fair-and-just reason to withdraw a guilty plea in some circumstances, erroneous advice as to a PRS or a standard range is not a fair-and-just reason to find a plea invalid as long as the defendant understood the maximum sentence he could face. ***See Fowler, supra***; Pa.R.Crim.P. 590. Accordingly, we affirm.

Judgment of sentence affirmed.

---

[2] ***Id***.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/25/2026